M. Elizabeth Day (SBN 177125)
Marc Belloli (SBN 244290)
Robin Curtis (SBN 271702)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 464-8501
Facsimile: (415) 426-4744
eday@bdiplaw.com
mbelloli@bdiplaw.com
rcurtis@bdiplaw.com

*Attorneys for Defendants*

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIRECTV, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ADEIA, INC., ADEIA GUIDES INC.,<br>ADEIA MEDIA HOLDINGS LLC,<br>ADEIA TECHNOLOGIES INC.,<br>AND ADEIA MEDIA SOLUTIONS<br>INC.,<br><br>　　　　Defendants. | Case No. 3:25-cv-11048-JSC<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1)**<br><br>Hon. Jacqueline S. Corley<br>Courtroom 8<br><br>Date: May 14, 2026<br>Time: 10:00am |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **May 14, 2026** at 10:00 a.m., or as soon as the matter may be heard, before the Honorable Jacqueline Scott Corley in Courtroom 8, 450 Golden Gate Avenue, San Francisco, California, Defendants Adeia, Inc., Adeia Guides Inc., Adeia Media Holdings LLC, Adeia Technologies Inc., and Adeia Media Solutions Inc. (collectively "Adeia" or "Defendants") will and hereby does move to dismiss this action for lack of subject matter jurisdiction.

This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1). As set forth more fully in the Memorandum of Points and Authorities below, DIRECTV's Complaint fails to allege any redressable injury-in-fact and therefore does not establish Article III standing to seek declaratory judgments of non-infringement or invalidity for the patents it has placed at issue. Because the Complaint identifies no concrete controversy sufficient to support subject-matter jurisdiction, this action must be and should be dismissed.

This motion is based upon this notice of motion and the accompanying memorandum of points and authorities, the papers and records on file in this matter, including DIRECTV's Complaint, matters the Court may judicially notice, and such other matters as may properly come before the Court.

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

III.    LEGAL BACKGROUND ..................................................................................... 4

IV.     ARGUMENT ....................................................................................................... 6

    A.  DIRECTV's Complaint Lacks Redressability ................................................ 6

    B.  DIRECTV's Complaint Fails to Show Injury-in-Fact ................................... 8

        1. The strength of any threatening language in communication between the
           parties. ................................................................................................... 9

        2. The depth and extent of infringement analysis conducted by the patent
           holder. ................................................................................................... 10

        3. Whether the patent holder imposed a deadline to respond. ................... 10

        4. Any prior litigation between the parties; 5. The patent holder's history
           of enforcing the patent at issue. ........................................................... 10

        5. Whether the patent holder has identified a specific patent and specific
           infringing products. .............................................................................. 11

        6. Remaining *Cepheid* factors. ................................................................ 11

    C.  The Court Should Decline to Exercise Declaratory Judgment Jurisdiction. 14

V.      CONCLUSION .................................................................................................. 16

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

# TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Avery Dennison Corp.*
673 F.3d 1372 (Fed. Cir. 2012) .................................................................................5

*AbbVie Inc. v. MedImmune Ltd.*
881 F.3d 1334 (Fed. Cir. 2018) .................................................................................7

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*
975 F. Supp. 2d 1083 (N.D. Cal. 2013).....................................................................9

*Adeia Semiconductor Bonding Technologies Inc. v. Advanced Micro Devices, Inc.*
No. 7:25-cv-00510, Dkt. No. 1 (W.D. Tex. Nov. 3, 2025).....................................10

*Adeia Techs., Inc. v. The Walt Disney Co.*
No. 1:24-cv-01231-UNA, Dkt. No. 1 (D. Del. Nov. 7, 2024) ................................11

*Apple Inc. v. VoIP-Pal.com, Inc.*
506 F. Supp. 3d 947 (N.D. Cal. 2020)....................................................................6, 9

*Apple v. Qualcomm*
992 F.3d 1378 (Fed. Cir. 2021) .................................................................................8

*Bennett v. Spear*
520 U.S. 154 (1997).....................................................................................................4

*Calderon v. Ashmus*
523 U.S. 740 (1998).....................................................................................................7

*Cepheid v. Roche Molecular Sys., Inc.*
No. C-12-4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ................passim

*Chandler v. State Farm Mut. Auto. Ins. Co.*
598 F.3d 1115 (9th Cir. 2010) ...................................................................................4

*Current Lighting Sols., LLC v. Signify Holding B.V.*
No. CV 23-11398-GAO, 2024 WL 456923 (D. Mass. Feb. 6, 2024)....................15

*EMC Corp. v. Norand Corp.*
89 F.3d 807 (Fed. Cir. 1996) ...................................................................................15

*In re Qualcomm Litig.*
No. 17-CV-00108-GPC-MDD, 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) .passim

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*
599 F.3d 1377 (Fed. Cir. 2010) .........................................................................13, 14

iii

*Maya v. Centex Corp.*
658 F.3d 1060 (9th Cir. 2011) ............................................................................. 4

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007) ................................................................................. 5, 7, 15

*Mitek Systems, Inc. v. USAA*
139 F.4th 1340 (Fed. Cir. 2025) ........................................................................ 15

*Prasco, LLC v. Medicis Pharm. Corp.*
537 F.3d 1329 (Fed. Cir. 2008) ........................................................................... 9

*Red Hat, Inc. v. VirtaMove Corp.*
85 F. Supp. 3d 603 (N.D. Cal. 2025) ................................................................. 13

*Samsung Elecs. Corp. v. Oura Health Oy*
No. 24-cv-03245-AMO, 2025 WL 929410 (N.D. Cal. Mar. 27, 2025) ................... 13

*Toxgon Corp. v. BNFL, Inc.*
312 F.3d 1379 (Fed. Cir. 2002) ........................................................................... 5

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
454 U.S. 464 (1982) ............................................................................................ 4

*Warren v. Fox Family Worldwide, Inc.*
328 F.3d 1136 (9th Cir. 2003) ............................................................................. 4

*Washington Council v. Bellon*
732 F.3d 1131 (9th Cir. 2013) ............................................................................. 7

**Statutes**

28 U.S.C. § 2201(a) ........................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 4

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
CASE NO. 3:25-CV-11048-JSC**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

DIRECTV has not alleged a patent dispute; it has alleged a portfolio negotiation in search of a forum.  DIRECTV sued while still a licensee, without alleging any claim-specific accusation, deadline, or enforcement act by Adeia.  DIRECTV now asks this Court to adjudicate ten cherry-picked patents out of the thousands in Adeia's portfolio, even though its alleged injury is portfolio-wide licensing pressure.

That basic mismatch is dispositive. A declaratory judgment action cannot proceed where the Complaint itself alleges a portfolio-wide injury but seeks relief directed to a handful of patents without alleging that such rulings would resolve—indeed, would not even reach—the asserted controversy.  DIRECTV never alleges that adjudicating these ten patents would alter the parties' rights, adjust royalties, or advance resolution of the broader licensing dispute; the Complaint simply does not connect its claimed injury to the specific claims it wants adjudicated.  Article III demands a definite, redressable controversy, not the kind of untethered, piecemeal litigation DIRECTV attempts here.

The pleading also never establishes an injury-in-fact.  It alleges no threat, no ultimatum, no claim charts, no product identification, no deadline—no affirmative act by Adeia that could make litigation imminent rather than conjectural.  What DIRECTV offers instead is anticipatory forum shopping: a then-current licensee trying to leverage a federal complaint for bargaining power in anticipation of a portfolio negotiation.  The Declaratory Judgment Act is permissive, not compulsory; it exists to resolve real, claim-specific patent disputes, not to referee abstract alleged business disagreements.  On this record, dismissal is the only course that respects both Article III and the Act's discretionary design.  DIRECTV's complaint should be dismissed.

## II.    BACKGROUND

For more than three decades, Adeia and its predecessors have stood at the forefront of innovation in media and semiconductor technology.  Adeia Inc., Annual Report (Form 10-K) at 4,  (Feb. 26, 2026) (available at https://investors.adeia.com/financial-information/sec-filings).  Backed by a portfolio of over 13,000 patents and patent applications worldwide, Adeia has consistently shaped the technological foundations of modern entertainment and cutting-edge semiconductor fabrication and packaging.  *Id.*  On the media side, through its lineage of pioneering companies—United Video, Gemstar, Macrovision, Rovi, TiVo, and MobiTV, among others—Adeia's technology shapes the way millions of people explore and experience entertainment.  *Id.* at 5.  These innovators pioneered the first on-screen electronic program guides, made time-shifting of broadcast television both practical and intuitive, secured billions of video assets against unauthorized copying, launched the Emmy-winning TiVo DVR, and brought live and on-demand video to mobile devices at global scale. Xperi Inc., *Company Timeline*, https://xperi.com/company/timeline/ (last visited Mar. 10, 2026).  Today, Adeia continues that tradition of innovation, investing tens of millions annually in research and development and partnering with leading academic and industrial research institutions worldwide.  *See* Adeia Inc., *About Adeia*, https://adeia.com/about-adeia (last visited Mar. 10, 2026)

DIRECTV itself has long recognized the value of Adeia's innovations.  For decades, DIRECTV and Adeia's predecessors have been in continuous licensing relationships—beginning with DIRECTV's 1994 license covering MVPD-related technologies and continuing through AT&T's portfolio-wide license, which extended through December 31, 2025.  *See* Compl. ¶¶ 15–17.  Yet on December 29, 2025, while still operating under that license, DIRECTV filed this declaratory judgment action.  *See* Compl. ¶¶ 15–17.

2

DIRECTV's asserted basis for invoking this Court's jurisdiction rests not on any concrete enforcement act by Adeia, but rather on DIRECTV's characterization of Adeia's general licensing posture.  The Complaint does not allege any specific communication in which Adeia asserted infringement of any patent—no claim chart, no cease-and-desist letter, no notice of alleged infringement of any kind.[1]  Instead, the Complaint relies on broad generalities: that "Adeia has asserted that DIRECTV requires a license to its media patent portfolio," and that Adeia believes DIRECTV "needs to agree to a license . . . once the current AT&T license agreement expires," and that Adeia purportedly "demanded that DIRECTV once again enter a license agreement . . . and pay very substantial royalties."  Compl. ¶¶ 3, 19.  DIRECTV likewise invokes an alleged practice of Adeia enforcing its patents against other entities, citing litigation involving the Walt Disney Company and AMD.  Compl. ¶ 19.  None of this, however, ties Adeia to any patent-specific infringement allegation directed at DIRECTV.

Despite failing to plead any specific communication, claim-by-claim notice, or concrete assertion of infringement directed to DIRECTV, the Complaint abruptly pivots to a sweeping set of declaratory judgment demands.  DIRECTV theorizes—on "information and belief"—that Adeia will contend DIRECTV infringes ten different patents, based on both DIRECTV Stream and DIRECTV's MVPD products: claim 1 of the '010, '418, '245, '961, and '334 patents; claim 32 of the '528 patent; claim 1 of the '526 patent; and claim 1 of the '165, '668, and '922 patents.  *See* Compl. ¶¶ 23–24.  On that anticipated contention, DIRECTV seeks declaratory judgments of non-infringement for seven of those patents and invalidity for the remaining three—

---

[1]In resolving this motion, the Court's analysis must focus on DIRECTV's pleading.  But Adeia notes for the Court that the parties did have discussions subject to a non-disclosure agreement.  DIRECTV breached that agreement, which is governed by a forum selection clause choosing New York as the appropriate forum.  Adeia's breach of contract action is pending.  *See Adeia Inc. v. DIRECTV, LLC*, No. 1:26-cv-00238-AT (S.D.N.Y. filed Jan. 12, 2026)

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

culminating in a request for declarations of invalidity, non-infringement, and attorneys' fees. *See* Compl. Prayer for Relief.

## III.    LEGAL BACKGROUND

Rule 12(b)(1) permits dismissal where a court "lack[s] subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Lack of Article III standing requires dismissal for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Once jurisdiction is challenged, the plaintiff bears the burden to establish it. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A 12(b)(1) challenge "may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Because "standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion." *Chandler*, 598 F.3d at 1121–22.

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). The "irreducible constitutional minimum" of standing requires a plaintiff to demonstrate (1) "injury in fact," (2) "fairly traceable" to the defendant, and (3) "likely" to be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

Because "standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion." *Chandler*, 598 F.3d at 1121–22. A jurisdictional challenge "may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren*, 328 F.3d at 1139.

Although Rule 12(b)(1) is governed by regional-circuit law as "a procedural question not unique to patent law," the existence of an Article III controversy in a patent declaratory judgment action is governed by Federal Circuit law. *Toxgon Corp.*

4

*v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002); *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

A district court has jurisdiction only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The Declaratory Judgment Act "provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so. *Id.* at 136 (cleaned up with emphasis in original).

Following *MedImmune*, the Federal Circuit requires "an injury in fact traceable to the patentee," which demands "an affirmative act by the patentee related to the enforcement of his patent rights." *3M*, 673 F.3d at 1378. To show this affirmative act, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other's product line.'" *Id.* at 1378–79 (quotation omitted). "How much more" is a "case-by-case analysis." *Id.*

In applying these principles, courts in this District routinely consider factors "that the Federal Circuit and Supreme Court have generally considered in determining whether the patentee has taken an affirmative act: (1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a holding company with no income other than enforcing patent rights; (9) whether the patent holder refused to give assurance it will not enforce the patent; (10) whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
CASE NO. 3:25-CV-11048-JSC**

suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as an attempt to create a controversy." *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 967–68 (N.D. Cal. 2020) (citing *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 WL 184125, at *5–6 (N.D. Cal. Jan. 17, 2013)).

## IV.    ARGUMENT

This case fails three times over—twice under Article III and once as a matter of discretion.  First, DIRECTV does not show redressability: its supposed injury is portfolio-wide licensing pressure, yet it sues over ten cherry-picked patents.  Based on the facts alleged, the relief sought would therefore not move the needle on the only dispute DIRECTV describes.  Second, DIRECTV does not show injury-in-fact: the Complaint does not allege any patentee-directed affirmative act—no threat, no deadline, no claim-specific accusation, no claim charts, no product identification—capable of creating a definite and concrete controversy.  Third, even if some jurisdictional theory survived, the Declaratory Judgment Act is permissive, not compulsory, and this preemptive suit—filed by a current licensee to manufacture a forum for an alleged portfolio quarrel—presents a clean case for declining jurisdiction.  The Court should dismiss.

### A.    DIRECTV's Complaint Lacks Redressability

DIRECTV's own pleading demonstrates a fundamental mismatch between the injury it asserts and the relief it seeks.  The Complaint identifies the supposed harm as Adeia's insistence on a portfolio-wide license drawn from a portfolio that (by DIRECTV's account) may have once encompassed "over 6,000 issued patents and pending applications."  Compl. ¶¶ 3, 14.  Yet the pleading and prayer for relief target only ten cherry-picked patents—seeking declarations of non-infringement as to seven and invalidity as to three—plus fees.  Compl. ¶ 1; *see also id.* at Prayer for Relief.  The dispute DIRECTV pleads is portfolio-wide, while the relief it seeks is narrowly claim-specific.  Nothing in the pleadings even alleges—much less plausibly shows—

6

that adjudicating these ten patents would resolve Adeia's alleged portfolio demand or meaningfully alter the licensing posture DIRECTV says is the problem.

That disconnect is fatal under Article III. The Supreme Court and Federal Circuit have long cautioned that the Declaratory Judgment Act cannot be used to obtain piecemeal rulings on issues that will not finally and conclusively resolve the true controversy between the parties. The case *AbbVie Inc. v. MedImmune Ltd.* applied that principle, holding that a licensee could not pursue a freestanding invalidity declaration where the real dispute sounded in contract and the requested patent ruling would not resolve the parties' underlying licensing obligations. 881 F.3d 1334, 1338–40 (Fed. Cir. 2018). As the court explained, Article III does not permit "piecemeal adjudication of defenses" untethered to relief that ends the controversy. *Id.* (citing *MedImmune*, 549 U.S. at 127 n.7 and *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998)). *Washington Council v. Bellon* illustrates the same defect. The plaintiffs there alleged climate-related injuries, but their complaint never plausibly alleged that the relief they sought—a court order compelling regulators to impose refinery-specific GHG controls—would meaningfully reduce the emissions causing those harms. 732 F.3d 1131, 1146–47 (9th Cir. 2013). As the Ninth Circuit explained, the record showed no evidence that such controls would "curb a significant amount" of emissions, and any resulting reductions would be "scientifically indiscernible" against the global forces driving the alleged injuries. *Id.* Because the allegations failed to show that the requested order would actually redress the injury, the court held that Article III redressability was absent. *Id.*

Courts confronting portfolio-level licensing disputes have reached the same conclusion when confronted with a mismatch between the alleged injury and the relief requested. In *In re Qualcomm Litigation*, the district court dismissed declaratory judgment claims where a licensee sought rulings on a small subset of patents against the backdrop of a far larger portfolio. *In re Qualcomm Litig.*, No. 17-CV-00108-GPC-MDD, 2017 WL 5985598, at *21 (S.D. Cal. Nov. 8, 2017). The court held that

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

adjudicating a handful of "Additional Patents in Suit" would not alter the parties' legal relationship because the royalty structure and licensing posture were not contingent on those particular patents. *Id.* at *22. Accordingly, the requested relief would not redress the asserted injury. *Id.*

The Federal Circuit's reasoning in *Apple v. Qualcomm* confirms the point. 992 F.3d 1378 (Fed. Cir. 2021). In that case, Apple argued that it had standing to appeal a final written decision rejecting its invalidity challenges on two Qualcomm patents that were part of a broader license agreement. *Id.* at 1382–83. The Federal Circuit rejected that argument because Apple "ha[d] not alleged that the validity of the patents at issue will affect its contract rights (i.e., its ongoing royalty obligations)." *Id.* at 1383.

DIRECTV's pleading places it in precisely that same box. DIRECTV does not allege that Adeia's licensing demands turn on the validity or infringement of the ten challenged patents. Nor does it allege that adjudicating those patents would eliminate, reduce, or even meaningfully affect the portfolio-wide licensing demand that DIRECTV identifies as the operative harm. The Complaint's theory of injury and its requested remedy are ships passing in the night.

Because DIRECTV cannot show that adjudicating a limited group of patents would eliminate, reduce, or meaningfully affect the portfolio-wide licensing pressure it claims as its injury, it cannot satisfy Article III's requirement that the relief sought be likely to redress the alleged harm. Dismissal is therefore required.

## B.   DIRECTV's Complaint Fails to Show Injury-in-Fact

Even setting redressability aside, DIRECTV's Complaint falters at the threshold: it never alleges the kind of concrete, patentee-driven conduct necessary to create the definite and concrete dispute Article III demands. As the Federal Circuit has stressed, declaratory judgment jurisdiction in the patent context ordinarily requires "an affirmative act by the patentee related to the enforcement of its patent rights." *3M*, 673 F.3d at 1378. And it has cautioned that "more is required than a

communication from a patent owner . . . merely identifying its patent and the other's product line," with the sufficiency of enforcement conduct turning on a "case-by-case analysis." *Id.* at 1378–79 (quotation omitted). Yet DIRECTV does not allege any such act—not a letter, not a meeting, not even who supposedly said what, or when. That is not merely a pleading oversight; it goes to the constitutional essence of the inquiry. A dispute must be "real and substantial," not "conjectural or hypothetical." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336–41 (Fed. Cir. 2008).

Courts in this district routinely assess injury-in-fact through a thirteen-factor framework established in *Cepheid*, 2013 WL 184125, at *6. *See, e.g., Apple*, 506 F. Supp. 3d at , 967–68 (assessing injury-in fact in view of *Cepheid* factors); *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1087–88 (N.D. Cal. 2013) (same). DIRECTV's allegations do not satisfy a single one. Instead of concrete enforcement conduct, the Complaint offers only vague allusions to unspecified communications by unidentified individuals at unidentified times about Adeia's entire media portfolio, along with amorphous assertions of infringement, untethered to any particular patent or analysis. That is not actionable enforcement conduct. It is precisely the sort of indeterminate grievance that cannot sustain Article III jurisdiction.

1. **The strength of any threatening language in communication between the parties.**

The Complaint does not allege any threatening language from Adeia—not a letter, not an email, not even a date. At most, DIRECTV offers vague assertions that Adeia "needs [DIRECTV] to agree to a license . . . because DIRECTV infringes patents in Adeia's media portfolio," and that Adeia has "consistently informed DIRECTV that it would need a license to the Adeia patent portfolio." Compl. ¶¶ 3, 19. That bare level of detail gives the Court little to assess. The Complaint offers no quotations, no speakers, and no timeframe—leaving the Court unable to determine what was actually said or whether it bore any indicia of a threat. That threadbare pleading stands in

sharp contrast to cases like *ActiveVideo*, where the jurisdictional analysis turned on the content and tenor of an actual demand letter—something altogether missing in the pleadings. 975 F. Supp. 2d at 1090–92. Accordingly, this factor weighs against finding declaratory judgment jurisdiction.

### 2. The depth and extent of infringement analysis conducted by the patent holder.

The Complaint alleges no infringement analysis by Adeia whatsoever. It fails to allege an instance in which Adeia evaluated DIRECTV's products, compared them to any claim limitations, or even referenced the specific patents DIRECTV has placed at issue. There is not a single allegation of claim charts, product-to-patent mapping, or any other hallmark of an infringement analysis. The pleading does not even assert that Adeia mentioned these particular patents in any communication. This factor "weighs severely against finding declaratory judgment jurisdiction." *In re Qualcomm Litig.*, 2017 WL 5985598, at *15.

### 3. Whether the patent holder imposed a deadline to respond.

The Complaint also alleges no deadline of any kind imposed by Adeia. There is no suggestion that Adeia warned of an impending lawsuit, set a timetable for DIRECTV to reply to any communication, or tied the expiration of the parties' license agreement to a demand that DIRECTV secure or renew a license or face suit. No ultimatum, countdown, or other indication of urgency appears anywhere in the pleading.

### 4. Any prior litigation between the parties; 5. The patent holder's history of enforcing the patent at issue.

The Complaint alleges no prior litigation between Adeia and DIRECTV. Nor does it allege that Adeia has ever enforced or threatened to enforce, any of the patents at issue here. The most DIRECTV offers is that Adeia has litigated against Disney and AMD, but even that allegation does not claim overlap with the patents DIRECTV selected in this action. And the public filings in those matters confirm there is none.

DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
CASE NO. 3:25-CV-11048-JSC

*See Adeia Semiconductor Bonding Technologies Inc. v. Advanced Micro Devices, Inc.*, No. 7:25-cv-00510, Dkt. No. 1 (W.D. Tex. Nov. 3, 2025); *Adeia Techs., Inc. v. The Walt Disney Co.*, No. 1:24-cv-01231-UNA, Dkt. No. 1 (D. Del. Nov. 7, 2024). The Complaint thus does not point to any enforcement history that might support a credible threat of suit.

### 5. **Whether the patent holder has identified a specific patent and specific infringing products.**

This factor likewise cuts decisively against jurisdiction. DIRECTV does not allege any communication in which Adeia referenced any of the ten patents DIRECTV selected for this suit, much less any DIRECTV product said to infringe them. Accordingly, DIRECTV's "lack of specificity in identifying precise infringing patents weighs severely against finding declaratory judgment jurisdiction." *In re Qualcomm Litig.*, 2017 WL 5985598, at *18.

### 6. **Remaining *Cepheid* factors.**

The remaining *Cepheid* factors fare no better. The Complaint alleges no conduct by DIRECTV that changed in response to any supposed threat (factor 6). Nor does it allege any particular frequency or substance of communications from Adeia—only the vague assertion that Adeia "consistently" conveyed the need for a license (factor 7). Compl. ¶ 19. It offers no basis to suggest that Adeia is a bare enforcement entity (factor 8), and no allegation that DIRECTV ever sought—or that Adeia ever declined—assurances of non-enforcement (factor 9). Nor does it point to any familiarity by Adeia with DIRECTV's accused products (factor 11), any timeline from which imminence could be inferred (factor 12), or anything suggesting that Adeia, rather than DIRECTV, initiated the relevant discussions (factor 13). In short, DIRECTV has not pleaded a single fact that would help it with any of the factors courts in this District use to determine whether a patentee has undertaken the kind of "affirmative act" necessary to create a real Article III controversy.

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

A survey of these factors underscores the limits of DIRECTV's pleading: it does not allege any "affirmative act" by Adeia that would create the concrete dispute Article III requires.  That is consistent with cases refusing jurisdiction where a declaratory plaintiff alleges only high-level portfolio discussions rather than patent-specific conduct.

In *In re Qualcomm Litigation*, the court dismissed Apple's declaratory judgment claims as to the "Additional Patents-in-Suit" even though Apple had produced claim charts—because those charts were not tethered to the patents Apple sought to challenge.  2017 WL 5585598, at *13, *15–16   The court stressed that "the complete absence of detailed infringement analysis as to the Additional Patents-in-Suit weighs severely against finding declaratory judgment jurisdiction." *Id.* at *15–16.  Likewise, Apple's failure to identify "specific allegations of infringement" as to those patents weighed "severely against finding declaratory judgment jurisdiction." *Id.* at *17–18.  That conclusion held even in the face of Qualcomm's prior litigation involving related technologies, because none of that prior activity linked Qualcomm's conduct to the specific patents Apple unilaterally placed in suit. *Id.* at *16–17.  DIRECTV's allegations fall below even that rejected showing: the Complaint does not plead any claim charts, any product-to-claim mapping, any communication directed to the patents asserted here, or any history of litigation involving these patents.

The *In re Qualcomm* court also underscored the structural problem with Apple's jurisdictional theory.  Accepting Apple's position, the court explained, would effectively allow jurisdiction over the "thousands of patents listed" in Qualcomm's communications—including patents "that have never been at issue." *Id.* at *18*.  DIRECTV's theory would work the same mischief.  Under DIRECTV's view, a handful of vague, portfolio-level statements about a need for a license would open the door to declaratory judgment jurisdiction over any of the thousands of patents in

12

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

Adeia's portfolio. As the court cautioned, "[t]his reach is too broad in light of the Federal Circuit's requirement of an affirmative act." *Id.*

The district court's seminal analysis in *Cepheid v. Roche* reinforces the same principle. There, even four licensing-related communications—including one with a response deadline—failed to establish jurisdiction because the patentee never identified specific products, never tied its statements to the asserted patent, never provided any claim charts or analysis, made no explicit allegations of infringement, and undertook no follow-up enforcement. 2013 WL 184125, at *10–11. As the court summarized, under those circumstances "the majority of the factors . . . weigh against finding standing." *Id.* at *11. So too here: DIRECTV alleges nothing more than undifferentiated, portfolio-level commentary—precisely the kind of high-level exchange that *Cepheid* identifies as insufficient.

The Federal Circuit has likewise made clear that informal or secondhand statements—especially from individuals "not in decision-making positions"—cannot constitute an affirmative act. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1381–84 (Fed. Cir. 2010). The *Innovative Therapies* panel agreed that even conversations with executives who said the corporation would "act aggressively" toward the plaintiff's product launch, and would sue "if it first determined that the product infringed," were insufficient because the comments were impromptu, made by employees with no authority, and offered without having evaluated the product at issue. *Id.* at 1380. DIRECTV's allegations, lacking the who-said-what-and-when details of an affirmative act, are even further removed from the mark than the remarks the Federal Circuit rejected in *Innovative Therapies*.

Nor can DIRECTV salvage jurisdiction by invoking Adeia's litigation against third parties. Courts have squarely rejected that maneuver. In *Red Hat, Inc. v. VirtaMove Corp.*, the patentee had sued IBM, HPE, Google, Amazon, Microsoft, and Oracle on the very patents Red Hat placed at issue, yet the court held there was no Article III controversy because the patentee had taken "*no affirmative act whatsoever*"

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

toward Red Hat itself. 785 F. Supp. 3d 603, 609–11 (N.D. Cal. 2025) (emphasis added). DIRECTV's reliance on Adeia's suits against Disney and AMD—neither of which involves the patents asserted here—thus adds nothing. *See also Samsung Elecs. Corp. v. Oura Health Oy*, No. 24-cv-03245-AMO, 2025 WL 929410, at *3–6 (N.D. Cal. Mar. 27, 2025) (holding that even a patentee with a robust enforcement history cannot be haled into a DJ action absent conduct "directed at Samsung," and that lawsuits against others "do not suffice.").

In the end, the narrative provided in the Complaint reduces to this: a licensor discussed licensing with its licensee, and the licensee raced to the courthouse. The Complaint's failure to allege the ordinary hallmarks of an injury in fact—threats, claim-specific analysis, deadlines, or conduct altering the parties' legal rights—makes this a straightforward case for dismissal.

### C.    The Court Should Decline to Exercise Declaratory Judgment Jurisdiction.

If there were any case to file, DIRECTV filed it too soon and on the wrong theory. It was still a licensee when it raced to the courthouse, and its Complaint identifies no concrete, claim-specific assertion by Adeia; no alleged ultimatum; and no alleged affirmative act directed at DIRECTV that would make litigation anything close to imminent. The Declaratory Judgment Act does not reward that kind of anticipatory forum shopping. The Federal Circuit has cautioned against a holding that "would invite a declaratory judgment plaintiff in a patent case to file suit at the earliest moment it conceives of any potential benefit," confident that it might provoke a responsive suit or, at worst, face dismissal without consequence. *Innovative Therapies*, 599 F.3d at 1384. DIRECTV's filing runs afoul of that very caution: it sued first, while fully covered by its license, without pleading any affirmative enforcement conduct.

The Declaratory Judgment Act is permissive, not compulsory. Federal courts "may" declare rights, 28 U.S.C. § 2201(a), but they need not issue declaratory relief

14

where the plaintiff seeks to manufacture a controversy or to litigate an abstract, portfolio-level business dispute rather than a concrete, claim-specific controversy. The Federal Circuit has recently reaffirmed that discretionary dismissal is especially appropriate where the plaintiff's theory would force a court to resolve issues untethered to the parties' real dispute. In *Mitek Systems, Inc. v. USAA*, the court upheld a district court's "detailed, independent analysis—separate from its jurisdictional findings and conclusions—explaining why it would still decline jurisdiction even if it existed," because any genuine controversy flowed through end-user banks and would be better addressed, if at all, in customer litigation. 139 F.4th 1340, 1355–57 (Fed. Cir. 2025). The same logic applies here with even greater force. As alleged, DIRECTV's grievance is not a claim-specific dispute over the handful of patents it selected for this case; it is dissatisfaction with perceived portfolio-wide licensing pressure. Resolution of piecemeal aspects potentially relevant to a broader dispute is not an efficient use of judicial resources. The Court has discretion to decline to resolve them.

And critically, this is the sort of case in which the Federal Circuit has approved declining jurisdiction where the declaratory judgment procedure is deployed as a bargaining chip in an alleged license negotiation. In *EMC Corp. v. Norand Corp.*, the Federal Circuit affirmed discretionary dismissal even though an actual controversy existed, because EMC had filed suit "merely [as] a defensive step" to "improve [its] posture in the ongoing negotiations"—conduct that the court held does *not* serve the purposes of the Declaratory Judgment Act. 89 F.3d 807, 815–16 (Fed. Cir. 1996), *overruled in part on other grounds by MedImmune*, 549 U.S. 118.

The parallels here are unmistakable. DIRECTV initiated this suit while still a licensee, seeking negotiating leverage and presenting a complaint bereft of any claim-specific, product-specific, or otherwise identifiable threat. As in *EMC*, DIRECTV's filing is a tactical step in a commercial negotiation, not an effort to resolve an identified patent dispute. *See Current Lighting Sols., LLC v. Signify*

*Holding B.V.*, No. CV 23-11398-GAO, 2024 WL 456923, at \*4 (D. Mass. Feb. 6, 2024) (ruling that "initiation of this action had a tactical motivation that does not serve the proper objectives of the Declaratory Judgment Act").

So too have district courts in this Circuit recognized discretion to dismiss declaratory suits spawned not by genuine enforcement conduct, but by bare attempts to create jurisdiction. As the court observed in *Cepheid v. Roche*, the absence of alleged concrete, patent-specific conduct—and the presence of a plaintiff-initiated effort to manufacture a controversy—provides strong grounds for declining jurisdiction even where Article III might otherwise be satisfied. 2013 WL 184125, at \*13. That teaching is directly on point: DIRECTV's Complaint is devoid of allegations of any affirmative act by Adeia, and its decision to sue during the term of its own license only underscores that it sought a tactical advantage.

In the end, the Complaint's narrative reflects nothing more than a licensor engaged in ordinary licensing discussions with its licensee—and a licensee that chose to preemptively file suit without alleging any claim-specific dispute. Given the absence of any allegation that Adeia threatened litigation, imposed deadlines, identified infringing products, advanced claim charts, or took any enforcement-oriented action that might alter the parties' legal rights, this is a clean case for declining declaratory judgment jurisdiction. The Court should do so here.

## V.   CONCLUSION

For the foregoing reasons, Adeia's motion should be granted and DIRECTV's declaratory judgment complaint should be dismissed.

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

Dated: March 13, 2026

Respectfully submitted,

/s/ Bradley Caldwell

Bradley W. Caldwell (appearance *pro hac vice*)
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady (appearance *pro hac vice*)
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry (appearance *pro hac vice*)
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
Brian D. Johnston (appearance *pro hac vice*)
Texas State Bar No. 24080965
Email: bjohnston@caldwellcc.com
R. Seth Reich Jr. (appearance *pro hac vice*)
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
John F. Summers (appearance *pro hac vice*)
Texas State Bar No. 24079417
jsummers@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

M. Elizabeth Day (SBN 177125)
Marc Belloli (SBN 244290)
Robin Curtis (SBN 271702)
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 464-8501
Facsimile: (415) 426-4744
eday@bdiplaw.com
mbelloli@bdiplaw.com
rcurtis@bdiplaw.com

*Attorneys for Defendants*
*Adeia, Inc., Adeia Guides Inc., Adeia Media*
*Holdings LLC, Adeia Technologies Inc., and*
*Adeia Media Solutions Inc.*

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**