RYAN K. YAGURA (CA S.B. #197619)
ryagura@omm.com
XIN-YI ZHOU (CA S.B. #251969)
vzhou@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: +1 213 430 6000

SHARON L. DAVIS (admitted *pro hac vice*)
MICHAEL H. JONES (admitted *pro hac vice*)
BRYAN B. THOMPSON (admitted *pro hac vice*)
BENJAMIN FISHMAN (admitted *pro hac vice*)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: +1 202 783 6040

Attorneys for Plaintiff DIRECTV, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DIRECTV, LLC<br><br>Plaintiff,<br><br>v.<br><br>ADEIA, INC., ADEIA GUIDES INC., ADEIA MEDIA HOLDINGS LLC, ADEIA TECHNOLOGIES INC. AND ADEIA MEDIA SOLUTIONS, INC.,<br><br>Defendants. | Case No. 3:25-cv-11048-JSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1)**<br><br>Hon. Jacqueline S. Corley<br>Courtroom 8<br><br>Date: May 14, 2026<br>Time: 9:00 am |

**Table of Contents**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................2

      A.    The Technology and Patents at Issue.......................................................2

            1.    MVPD Products and Patents............................................................2

            2.    Streaming Products and Patents.......................................................4

      B.    The Extensive Licensing History Between the Parties .............................5

      C.    Defendants' Lawsuit in the Southern District of New York.....................6

III.  LEGAL STANDARDS.........................................................................................7

IV.   ARGUMENT ........................................................................................................8

      A.    The Complaint Pleads a Redressable Injury ............................................8

            1.    Adjudication of the Patents-in-Suit Will Resolve Key Disputes
                  Between the Parties ........................................................................8

            2.    Adeia's Arguments are Unsupported in the Law.............................12

      B.    The Complaint Pleads Facts Sufficient to Support An Injury-in-Fact for
            Declaratory Judgment Jurisdiction.........................................................14

            1.    Adeia's Demands that DIRECTV License Its Portfolio Constitute
                  an Affirmative Act .........................................................................15

            2.    The *Cepheid* Factors Further Demonstrate Subject Matter
                  Jurisdiction ...................................................................................17

                  a.    Factor 3 ("whether the patent holder imposed a deadline to
                        respond")...................................................................................18

                  b.    Factor 4 ("any prior litigation between the parties") and Factor 5
                        ("the patent holder's history of enforcing the patent at issue") .......18

                  c.    Factor 6 ("whether the patent holder's threats have induced the
                        alleged infringer to change its behavior")....................................20

      d.     Factor 8 ("whether the patent holder is simply a holding company with no source of income other than enforcing patent rights")........21

      e.     Factor 9 ("whether the patentee refused to give assurance it will not enforce its patent")...................................................................22

      f.     Factor 11 ("the extent of the patent holder's familiarity with the product prior to suit") and Factor 12 ("the length of time that transpired after the patent holder asserted infringement")...............22

      g.     Remaining Considerations (Factors 1, 2, 7, 10, and 13)..................22

C.     Discretionary Factors Support Denial of Defendants' Motion ...............................23

V.     CONCLUSION ..................................................................................................................25

**Table of Authorities**

**Cases**

*3M Co. v. Avery Dennison Corp.*,

673 F.3d 1372 (Fed. Cir. 2012)...............................................................................7, 15, 18

*ABB Inc. v. Cooper Indus., LLC*,

635 F.3d 1345 (Fed. Cir. 2011)......................................................................................16, 20

*AbbVie Inc. v. MedImmune Ltd.*,

881 F.3d 1334 (Fed. Cir. 2018)................................................................................................12

*ActiveVideo Networks, Inc. v. TransVideo Elecs., Ltd.*,

975 F. Supp. 2d 1083 (N.D. Cal. 2013) ..............................................................................17, 18

*Altice USA, Inc. et al v. Adeia Inc. et al*,

Case No. 1-25-cv-05390 (S.D.N.Y. June 27, 2025) ............................................................10, 19

*Ameranth, Inc. v. ChowNow, Inc.*,

No. 20-cv-2167-BEN-BLM, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) .............23

*Apple Inc. v. Qualcomm Inc.*,

992 F.3d 1378 (Fed. Cir. 2021)....................................................................................................13

*Barnes & Noble, Inc. v. LSI Corp.*,

823 F. Supp. 2d 980 (N.D. Cal. 2011) ......................................................................................24

*Bonnichsen v. United States*,

367 F.3d 864 (9th Cir. 2004) ....................................................................................................8

*BP Chemicals Ltd. v. Union Carbide Corp.*,

4 F.3d 975 (Fed. Cir. 1993).........................................................................................................24

*Capo, Inc. v. Dioptics Med. Prods. Inc.*,

387 F.3d 1352 (Fed. Cir. 2004).................................................................................................24

*Cat Tech LLC v. TubeMaster, Inc.*,

528 F.3d 871 (Fed. Cir. 2008).....................................................................................................17

*Cepheid v. Roche Molecular Sys., Inc.*,
No. C-12-4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013)......................17, 23

*Chandler v. State Farm Mut. Auto Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ..................................................................................7

*Children's Network, LLC v. PixFusion LLC*,
722 F. Supp. 2d 404 (S.D.N.Y. 2010) .....................................................................24

*Ebates Performance Mktg., Inc. v. MyMail, Ltd.*,
No. 20-cv-04768-LHK, 2021 WL 121130 (N.D. Cal. Jan. 13, 2021)..................18, 20

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996)...................................................................................25

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009)..........................................................................passim

*Hulu LLC v. Rovi Corp.*,
No. 17-CV-02942-JD, 2017 WL 3535031 (N.D. Cal. Aug. 16, 2017) ......................16

*In re Qualcomm Litig.*,
No. 17-cv-00108-GPC-MDD, 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017).......13, 14

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001).....................................................................................24

*Lear, Inc. v. Adkins*,
395 U.S. 653 (1969)................................................................................................25

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ..................................................................................7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................................8

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
695 F.3d 1322 (Fed. Cir. 2012)...............................................................................23

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)..........................................................................................passim

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC,*

  571 U.S. 191 (2014) ..................................................................................................17, 25

*Micron Tech., Inc. v. Mosaid Techs., Inc.,*

  518 F.3d 897 (Fed. Cir. 2008) ................................................................................20, 22, 24

*Netflix, Inc. v. Rovi Corp.,*

  114 F. Supp. 3d 927 (N.D. Cal. 2015) ...................................................................................11

*Powertech Tech. Inc. v. Tessera, Inc.,*

  660 F.3d 1301 (Fed. Cir. 2011) ...............................................................................................7

*Prasco, LLC v. Medicis Pharm. Corp.,*

  537 F.3d 1329 (Fed. Cir. 2008) ..............................................................................................20

*Rovi Guides, Inc. v. Comcast Corporation,*

  Case No. 2-18-cv-00253 (C.D.C.A. January 10, 2018) ...............................................19

*Safe Air for Everyone v. Meyer,*

  373 F.3d 1035 (9th Cir. 2004) ...............................................................................................7

*SanDisk Corp. v. STMicroelectronics, Inc.,*

  480 F.3d 1372 (Fed. Cir. 2007) ................................................................8, 14, 15, 16

*Simon v. E. Kentucky Welfare Rts. Org.,*

  426 U.S. 26 (1976) ...............................................................................................................8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*

  874 F.3d 1329 (Fed. Cir. 2017) ............................................................................................11

*Washington Env't Council v. Bellon,*

  732 F.3d 1131 (9th Cir. 2013) .............................................................................................13

*White v. Lee,*

  227 F.3d 1214 (9th Cir. 2000) ................................................................................................7

*Wolfson v. Brammer,*

  616 F.3d 1045 (9th Cir. 2010) ...............................................................................................8

*X Corp. v. Adeia Inc. et al,*

  Case No. 3-23-cv-06151 (N.D.C.A. November 28, 2023) .......................................19

**Statutes**

35 U.S.C. § 101 ......................................................................................................................9

Plaintiff DIRECTV, LLC ("DIRECTV") respectfully submits this memorandum in opposition to the Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) (Dkt. 38) filed by Defendants Adeia Inc., Adeia Guides Inc., Adeia Media Holdings LLC, Adeia Technologies Inc., and Adeia Media Solutions Inc. (collectively "Adeia").  For the reasons set forth below, the motion should be denied.

## I.    INTRODUCTION

The parties to this litigation have been wrangling over the value and applicability of Adeia's patents to DIRECTV's business for decades.  Adeia's characterization of this case as one in which the dispute between the parties is insufficiently substantial to support this Court's jurisdiction ignores the real-world circumstances at play here.  Adeia is a publicly traded company with more than $440 million in annual revenue, essentially all of which comes from licensing its patent portfolio.  *See* Dkt. No. 38, Defendant's Mot. to Dismiss, at 2 (citing Form 10-K, *available at* https://investors.adeia.com/financial-information/sec-filings); *see also* Form 10-K at 11 (["[w]e derive our revenue from the licensing of our patents and other intellectual property") (*available at* https://investors.adeia.com/static-files/7a353da1-b418-444b-9a3c-85ee182bbb16) ("Adeia 10-K").  Adeia asserts that it has licensed over 90 percent of the U.S. Pay TV market to its media patent portfolio.  *See Adeia's Investor Deck*, at 14, Feb. 2026, (*available at* https://investors.adeia.com/static-files/e6d60e30-9b31-4655-8a1d-6497c56554ad).  DIRECTV, pursuant to a license entered by AT&T (its parent at the time), was a significant one of these Pay TV licensees. As the AT&T/DIRECTV agreement was nearing expiration, Adeia asserted that DIRECTV still required a license to its media patent portfolio.  *See* Dkt. No. 1, Compl. ¶ 19.  As explained below, the entirety of the circumstances, including the extensive licensing history between the parties, Adeia's insistence that DIRECTV enter a new license agreement, and the nature of Adeia's business model support declaratory judgment jurisdiction here.

In addition to challenging the substantial and immediate nature of the dispute between the parties, Adeia also asserts that DIRECTV fails to plead a redressable injury. Specifically, Adeia asserts that because DIRECTV "cherry picked" only ten patents out of Adeia's vast patent portfolio for this declaratory judgment, this case will make no difference to the parties and their dispute. Not so. As explained herein, these ten patents were selected precisely because the resolution of the parties' disputes as to them is important to the overall dispute over the licensing of Adeia's patent portfolio. Specifically, some or all of these ten patents: (1) are representative of Adeia's portfolio with respect to claimed subject matter over core aspects of DIRECTV's products and services; (2) were either previously asserted by Adeia's predecessor, Rovi Guides, and challenged by competitors to DIRECTV or cover very similar subject matter to such patents; and (3) involve a portfolio-wide validity concern because they are directed to abstract ideas inherent to Adeia's media technology. Given the nature of the patents selected, resolution of this action would "alter the parties' rights, adjust royalties, [and] advance resolution of the broader licensing dispute." *See* Dkt. No. 38, at 1.

## II.   <u>BACKGROUND</u>

### A.   The Technology and Patents at Issue

DIRECTV is a leader in the television distribution industry and has been at the forefront of sports and entertainment technology for nearly three decades with its content delivery platforms. DIRECTV's products and services can be grouped into two categories: (1) DIRECTV Stream Products and Services, and (2) DIRECTV Multichannel Video Programming Distributor ("MVPD") Products and Services. *See* Dkt. No. 1, ¶¶ 23-35. The declaratory judgment action includes ten patents (the "Patents-in-Suit") that purport to cover various aspects of each of these technologies.[1]

#### 1.   MVPD Products and Patents

---

[1] Copies of each of the patents were attached to the Complaint. *See* Dkt. 1.1-1.10.

The DIRECTV MVPD Products and Services include hardware (e.g., set-top box receiver systems, such as DIRECTV's Genie and Genie Mini) and software (e.g., DIRECTV's App) that are fundamental to DIRECTV's provision of cable television to its consumers.  *See* Dkt. No. 1, ¶¶ 24-25. As stated in the Complaint, "[t]he primary basis for entering [the original] license agreement was the portion of the Adeia portfolio that related to the operation of Multichannel Video Programming Distributor ("MVPD") technology for delivery of cable television to user homes." *Id.* at ¶ 15.  These patents, which "formed the core of the valuations of Adeia's portfolio," have now largely expired.  *Id.* at ¶ 17 (citing Adeia's November 2025 Investor Deck).  Nonetheless, some MVPD-related patents remain and are arguably relevant to the DIRECTV MVPD Products and Services.  For example, U.S. Patent No. 8,156,528 (the "'528 Patent") claims a system comprising a personal video recorder device and a personal video recorder compliant device—e.g., a primary DVR set-top box and a smaller, secondary box coupled to it.  (*see* '528 Patent at Abstract).  U.S. Patent No. 8,601,526 (the "'526 Patent") claims a method of manipulating media guidance information from a portable electronic device—e.g., selecting content to be recorded on a DVR set-top box via a mobile phone—and does not expire until July 2029 (*see* '526 Patent at 1:62-2:31).  U.S. Patent No. 8,640,165 (the "'165 Patent"), claims a method of displaying an interactive scoreboard of multiple sporting events while viewing a sporting event—e.g., a pop-up scoreboard of ongoing March Madness games while viewing one game—and expires in June 2031 (*see* '165 Patent at Abstract).  U.S. Patent No. 8,234,668 (the "'668 Patent") claims a method of providing both standard- and high-definition channels to users via a set-top-box and preventing display of the standard-definition if the client's device is capable of displaying the high-definition channel—i.e., only providing high-definition channels to a set-top box that is configured to do so—and expires in November 2029 (*see* '668 Patent at Abstract).  U.S. Patent No. 12,301,922 (the "'922 Patent") claims a method of displaying a media asset matching viewer preferences during the broadcast of another media asset—e.g., playing an advertisement during a broadcast—and expires in June 2038 (*see* '922 Patent at Abstract).  Because these patents purportedly

relate to core features of cable broadcasting and have significant periods of enforceability remaining, they are critical to the potential value of a license for DIRECTV.

### 2.     Streaming Products and Patents

The DIRECTV Streaming Products and Services include hardware (e.g., servers) and software (e.g., the DIRECTV App), as well as certain functionalities, that are central to DIRECTV's streaming offerings. *See* Dkt. No. 1, ¶¶ 23, 25. Several of the Patents-in-Suit, taken at face value, have claims directed to said hardware, software, and processes that are relevant to the DIRECTV Stream Products and Services. For example, U.S. Patent No. 10,506,010 (the "'010 Patent") claims a method of storing media content for video streams as fragments in multiple formats on a server—e.g., resolutions—and expires in May 2031. *See* '010 Patent at 1:17-32. This patent purports to cover a key aspect of streaming technology (formatting control). *See id.* at Abstract. Additional examples include: (1) U.S. Patent No. 8,805,418 (the "'418 Patent"), which claims a method for streaming location-based content—e.g., local news—and expires in December 2031 (*see id.* at 1:15-25); and (2) U.S. Patent No. 11,778,245 (the "'245 Patent"), which claims a method of displaying mid-stream content—e.g., advertisements—and expires in August 2028 (*see* '245 Patent at Abstract). Again, these technologies (location-based content control and displaying advertisements) are key aspects of offering a streaming service. The two remaining streaming-based patents are U.S. Patent Nos. 10,110,961 (the "'961 Patent") and 9,715,334 (the "'334 Patent"). The '961 Patent claims a method of displaying supplemental content—e.g. a picture-in-picture image—on a stream while the stream is subject to a playback operation—e.g., fast-forward—and expires in February 2034. *See* '961 Patent at 1:15-23. The '334 Patent claims a method of identifying where a user pauses a stream and subsequently providing an option to resume the stream at the pause point—e.g., a "Continue Watching" feature— and expires in June 2034. *See* '334 Patent at 1:21-32. Taken together, these patents cover a significant portion of the key technologies in Adeia's streaming media portfolio.

**B.     The Extensive Licensing History Between the Parties**

As Adeia concedes, the parties have a significant licensing history that spans more than three decades.  *See* Dkt. No. 1, ¶¶ 15-22; *see also* Dkt. No. 38 at 2 ("For decades, DIRECTV and Adeia's predecessors have been in continuous licensing relationships…."). DIRECTV first entered into a license agreement with Adeia's corporate predecessors in 1994.  Dkt. No. 1, ¶ 15.  As explained in the Complaint, "the primary basis for entering that license agreement was the portion of the Adeia portfolio that related to the operation of Multichannel Video Programming Distributor ('MVPD') technology for delivery of cable television to user homes." *Id.*  Before that original license expired on January 1, 2016, the parties were able to reach an agreement to extend the license to December 31, 2022.  *See id.* at ¶ 16 ("AT&T, for itself and its subsidiaries [including DIRECTV], entered a seven-year license agreement with Adeia's predecessor Rovi Corporation for its patent portfolio on December 15, 2015, effective beginning on January 1, 2016").  Subsequently, the license agreement was again amended to add three additional years, such that DIRECTV's license to the Patents-in-Suit was set to expire on December 31, 2025.  *See* Dkt. No. 1, ¶ 16.

As the most recent expiration deadline approached, the parties had discussions regarding another extension.  As part of the parties' negotiations, Adeia asserted that DIRECTV needed a license once the then-current license expired on December 31, 2025, because DIRECTV was infringing patents in Adeia's media portfolio (including the Patents-in-Suit).  *See id.* at ¶ 3; *see also id.* at ¶ 19 ("[A]s the end of the AT&T Agreement approached, Adeia demanded that DIRECTV once again enter a license agreement for the Adeia portfolio and pay very substantial royalties for those patents. Adeia has consistently informed DIRECTV that it would need a license to the Adeia patent portfolio after the AT&T Agreement expires").  As Adeia admits, the parties had additional discussions that are not detailed in the Complaint as they were subject to a non-disclosure agreement.  *See* Dkt. 38 at 3, n.1.  Despite the parties' discussions, no agreement for a new license was reached, and DIRECTV filed this declaratory judgment action on December 29, 2025.

## C.    Defendants' Lawsuit in the Southern District of New York

Adeia refers in a footnote to the suit that it brought in the Southern District of New York. *See id.* In that lawsuit, Adeia asserts that the filing of this declaratory judgment suit by DIRECTV violated the terms of the non-disclosure agreement between the parties and misappropriated Adeia's trade secrets. *See* Ex. 1, SDNY Compl., ¶¶ 24-28, 30-44, 45-62.[2] Adeia makes several admissions in its New York action pleadings, providing additional detail about the parties' extensive licensing negotiations and information exchanged therein. In a heavily redacted complaint, and subsequent motion for a preliminary injunction, Adeia alleges that Adeia's "confidential analysis" spanning "hundreds of pages" was used to prepare this declaratory judgment action. *Id.* at ¶¶ 28-31 ("DIRECTV knew about [redacted] only because Adeia shared this information pursuant to the NDA…. These materials spanned **hundreds of pages of Adeia's confidential analysis**") (emphasis added); *see also* Ex. 2, SDNY P.I. Mot. at 1 ("Adeia's long-time licensee, DIRECTV, asked for Adeia's confidential information to evaluate whether to renew its license and on what terms. Knowing the potential benefits of candid discussions, **Adeia agreed to share its analysis**") (emphasis added).[3] Adeia further alleges that information disclosed during the license negotiations constituted "protectable trade secrets." Ex. 1 at ¶¶ 46-50 ("Without [redacted] under the NDA, DIRECTV would have had to guess which patents to include in any declaratory relief action against Adeia…. Without access under the NDA [redacted], DIRECTV would have had no realistic way of selecting the ten specific patents it included in its Declaratory Judgment Action").[4]

---

[2] All exhibit citations refer to the exhibits attached to the Declaration of Sharon L. Davis being submitted concurrently herewith.

[3] In its preliminary injunction motion, Adeia asks the district court to enjoin DIRECTV from prosecuting this declaratory judgment action. DIRECTV opposes. *See* Ex. 3 (DIRECTV's Opposition). That motion is fully brief but not decided.

[4] DIRECTV disagrees that it improperly used any trade secrets in preparing the Complaint and has submitted a pre-motion letter indicating its intention to file a motion to dismiss the trade secret claims under Fed. R. Civ. P. 12(b)(6). *See* SDNY Dkt. 57.

## III.    LEGAL STANDARDS

A jurisdictional attack under Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  In a facial attack, as is the case here, the complaint allegations are challenged as "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).[5]  "[A] district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted).  The burden is on the plaintiff to establish declaratory judgment jurisdiction. *See Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1306 (Fed. Cir. 2011); *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Under the standard set forth in *MedImmune, Inc. v. Genentech, Inc.*, an Article III case or controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. 118, 127 (2007) (internal quotations and citation omitted). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*.  Following *MedImmune*, the Federal Circuit has held "that to establish an injury in fact traceable to the patentee a declaratory judgment plaintiff must allege an **affirmative act** by the patentee relating to the enforcement of [its] patent rights." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012) (citing *SanDisk Corp. v.*

---

[5] In contrast, with a "factual" attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id*.  Adeia has not done so here.

*STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-1381 (Fed. Cir. 2007)) (emphasis added).  "[C]onduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009).

For an injury to be redressable, it cannot merely be "speculative" that the injury would be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). A "plaintiff meets the redressability requirement if it is likely, although not certain, that his injury can be redressed by a favorable decision." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010). "If a plaintiff is 'an object of the [challenged action] ... there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* (quoting *Lujan*, 504 U.S. at 561–62); *see also Bonnichsen v. United States*, 367 F.3d 864, 873 (9th Cir. 2004) (when deciding redressability, "courts assume that plaintiff's claim has legal merit").[6]

## IV.    ARGUMENT

In the Motion, Adeia argues that: (1) it is not subject to a declaratory judgement action on the ten Patents-in-Suit because its patent portfolio is so large that resolution on those patents will not alter the parties' situation; and (2) DIRECTV failed to allege a substantial controversy  between the parties sufficient to support declaratory judgment jurisdiction.  Neither of these theories supports dismissal for lack of jurisdiction.  Adeia further argues that this Court should exercise its discretion to decline jurisdiction in this matter, but fails to provide a good reason for this Court to do so.

### A.    The Complaint Pleads a Redressable Injury

#### 1.    Adjudication of the Patents-in-Suit Will Resolve Key Disputes Between the Parties

---

[6] Adeia does not challenge the second requirement of standing—that the injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party. *See, e.g.*, *Lujan*, 504 U.S. at 560; *see also* Dkt. No. 38, at 6-14.

Adeia argues that adjudicating DIRECTV's claims as to the ten Patents-in-Suit would not "alter the parties' rights, adjust royalties, or advance resolution of the broader licensing dispute." Dkt. No. 38 at 1; *see also id.* at 8 ("DIRECTV cannot show that adjudicating a limited group of patents would eliminate, reduce, or meaningfully affect the portfolio-wide licensing pressure it claims as its injury…."). Adeia ignores that the Patents-in-Suit are representative of core issues in dispute with respect to both infringement and validity, and were selected precisely because their adjudication will meaningfully impact the parties' positions moving forward. In particular, and as addressed in turn below, these patents are significant based on their scope, the way in which they have been litigated in the past, and how they inform the analysis of subject matter eligibility under 35 U.S.C. § 101.

First, on their face, the Patents-in-Suit are directed to core aspects of DIRECTV's offerings, including both its MVPD and streaming products and services. *See* Section II.A, above. As such, they are representative of the parties' overall infringement dispute. Six of the Patents-in-Suit relate to DIRECTV's MVPD Products and Services, and their adjudication is important to the portfolio-wide dispute because "[t]he primary basis for entering [the original] license agreement was the portion of the Adeia portfolio that related to the operation of Multichannel Video Programming Distributor ("MVPD") technology for delivery of cable television to user homes." Dkt. No. 1, ¶ 15. The subsequent expiration of its earliest patents in this space has narrowed the applicability of Adeia's portfolio to DIRECTV's MVPD Products and Services. *See, e.g.*, *id.*, ¶ 17 ("The patents that formed the core of the valuation of Adeia's portfolio in 2016 and before are now expired"). Accordingly, the Court's adjudication of these patents will meaningfully impact the parties' respective rights in the portfolio-wide dispute. DIRECTV also selected patents that have significant patent life remaining, including patents that do not expire until 2031 and 2034 with respect to streaming technology, and a patent relating to MVPD technology that does not expire until 2038. *See supra* Section II.A. As such, adjudication of these patents will also advance resolution of the broader dispute by adjusting the applicable royalty periods (and thus, royalty amount) Adeia can reasonably assert.

Second, prior litigation history confirms the significance of the Patents-in-Suit to Adeia's portfolio. Six of the ten Patents-in-Suit either directly or indirectly overlap with patents at issue in previous actions brought by Adeia's predecessor, Rovi Guides, Inc., and/or declaratory judgment actions and IPRs brought by media companies. That is, both Adeia itself as well as DIRECTV's competitors have identified many of the same patents as significant to their own products and services, and adjudicated their disputes in various fora. For example, the '528 Patent was asserted by Rovi Guides against Comcast in district court and the ITC in 2019, with Comcast's Xfinity DVR system accused of infringement. *See* Compl. at 39-40, *Rovi Guides, Inc. v. Comcast Corporation et al*, Case No. 2-19-cv-03096 (C.D. Cal.); *see also Certain Digital Video Receivers, Broadband Gateways, and Related Hardware and Software Components*, Inv. No. 337-TA-1158, ITC-337-TA-1158. Comcast subsequently filed three IPRs challenging the validity of the '528 Patent (which were all voluntarily dismissed following settlement). *See, e.g.*, *Comcast Cable Communications, LLC v. Rovi Guides, Inc.*, IPR2020-00809 (PTAB); IPR2020-00810 (PTAB); IPR2020-00811 (PTAB). Also, a continuation of the '668 Patent at issue here, U.S. Patent No. 9,578,363, was asserted by Rovi Guides against Comcast in district court and the ITC in 2018, with Comcast's Xfinity set-top box system accused of infringement. *See* First Am. Compl. at 57-58, *Rovi Guides, Inc. v. Comcast Corporation*, 2-18-cv-00253 (C.D. Cal.); *see also Digital Video Receivers and Related Hardware and Software Components*, ITC-337-TA-1103. Comcast also filed IPRs challenging the validity of U.S. Patent No. 9,578,363, and the PTAB determined the claims to be unpatentable. *See* Judgment, *Comcast Cable Communications, LLC et al v. Rovi Guides, Inc. et al*, IPR2019-00284 (PTAB June 26, 2019).

Two other patents asserted here, the '010 Patent and '526 Patent, were also challenged on grounds of non-infringement in Altice USA's declaratory judgment action against Adeia. *See* Compl., *Altice USA, Inc. et al v. Adeia Inc. et al*, Case No. 1-25-cv-05390 (S.D.N.Y. June 27, 2025). In its declaratory judgment complaint, Altice alleged that its streaming Optimum TV Over the Top ("OTT") multimedia content system product was accused of infringing the '010 Patent, and that its conduct

relating to recording selections on its Optimum set-top boxes through its Optimum TV App was accused of infringing the '526 Patent. *See id.* at 8-9, 11. In the same action, Altice challenged additional patents that are related in claimed subject matter to, yet expire earlier than, the Patents-In-Suit. For example, Altice alleges it was accused of infringing U.S. Patent No. 8,165,598 (July 2030 expiration) through its provision of location-based content listing, which is similar to the content management subject matter of the '418 Patent asserted here (December 2031 expiration). *See id.* at 7-8. Similarly, Altice alleges it was accused of infringing U.S. Patent Nos. 8,589,324; 9,326,025; and 9,690,833 based on its Optimum TV App's search and recommendation functionalities, which are similar to the subject matter of the '334 Patent (June 2034 expiration). However, these Altice action patents expire much sooner, in November 2026, March 2027, and May 2028, respectively.

Third, certain Patents-in-Suit were selected because they are representative of a portfolio-wide validity concern. Portfolios with older media patents like the portfolio here often present the question of subject matter eligibility under § 101, which is a key point of disagreement when parties are considering a license. Many patents in the media environment have been held invalid under § 101. *See, e.g.*, *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 931, 952 (N.D. Cal. 2015), *aff'd*, 670 F. App'x 704 (Fed. Cir. 2016) (holding patents covering interactive program guides and playback resumption invalid under § 101 in a declaratory judgment action); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (holding patents directed to streaming audio/visual data invalid under §101). The dispute between DIRECTV and Adeia is no different, and adjudication of the § 101 question for the '165 Patent, the '668 Patent, and the '922 Patent will alter the parties' rights, adjust proposed royalties, and advance resolution of the broader licensing dispute. These patents claim features of cable broadcasting but admit that they are simply applying existing technology to narrow use cases (*i.e.*, the claims are directed to patent-ineligible abstract ideas). For example, the '165 Patent is directed to displaying an interactive scoreboard of multiple sporting events while viewing a sporting event—yet the '165 Patent admits that the underlying technology (e.g.,

program guides) was known at the time of the invention and the '165 Patent was merely applying this known technology to the limited use-case for sports broadcasting. *See* Dkt. No. 1, ¶¶ 124-125. The '668 Patent is directed to providing access to high-definition channels in a program guide when said channels are available. Again, the '668 Patent acknowledges that all hardware (e.g., set-top boxes connected to display devices), software (e.g., television program guides), and the content itself (e.g., standard-definition and high-definition) were known at the time of the invention. *See id.*, ¶¶ 132-133. The '922 Patent is directed to broadcasting targeted content to users—the same idea of targeted advertising that traces back decades if not centuries. As with the other two Patents-in-Suit, the '922 Patent does not purport to invent any technology relating to the broadcasting or identification of the targeted content. *See id.*, ¶¶ 140-141. These three patents thus represent a fundamental concern with Adeia's patent portfolio—that Adeia's patents claim patent-ineligible features of cable broadcasting.

The Patents-in-Suit were selected (or to use Adeia's term, "cherry-picked") because they offer the best vehicles to adjudicate the relevant questions of infringement and validity, and thus, the best basis to advance resolution of the broader dispute that arose from expiration of the license agreement. Aside from noting the size of its portfolio, Adeia offers no concrete reasons why adjudicating these patents—which relate to DIRECTV's core products and services, have been the subject of other litigations, have substantial remaining patent terms, address aspects of Adeia's historically significant patent rights (e.g., MVPD), and can help inform broader questions of § 101 validity—would not "move the needle" in resolving the parties' overall dispute. *See* Dkt. No. 38, at 6-8.

### 2.     Adeia's Arguments are Unsupported in the Law

Adeia offers no legal support for its proposition that adjudication of selected patents within a large portfolio is improper under the Declaratory Judgement Act. *See* Dkt. No. 38, at 7-8. The cases it relies upon address different issues, and thus, are readily distinguishable.

Adeia relies on *AbbVie Inc. v. MedImmune Ltd.*, 881 F.3d 1334 (Fed. Cir. 2018), which is a case about continuing royalties, a contract dispute, and British law. The licensee in *AbbVie* brought

a declaratory judgment action to terminate its license agreement to "hasten the end of its royalty obligations." *Id.* at 1335. Thus, this case was directed to a contractual dispute – whether royalites were contingent on the validity and infringement of the patent-at-issue – that was governed by British law. *See id.* at 1337-38. Unsurprisingly, the Court held that there was no jurisdiction because there was an "open question whether British courts would consider the invalidation of a patent to be tantamount to its expiration for purposes of this agreement," and "[w]ithout a resolution to this question, the parties' contractual dispute would persist." *Id.* at 1338. *Washington Env't Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013), is likewise directed to a fundamentally different question than the patent dispute before this Court. In *Washington*, the Plaintiffs alleged "that greenhouse gases have caused climate-related changes," and thus, sought "to compel the Washington State Department of Ecology (Ecology) and other regional agencies … to regulate greenhouse gas." *Id.* at 1135-36. Ultimately, the Ninth Circuit found that there was no standing because Plaintiffs failed to show a causal connection between their injuries and the agencies' failure to adequately regulate. *See id.* at 1146-47 ("Plaintiffs have not submitted any evidence that an injunction requiring RACT controls would likely reduce the pollution causing Plaintiffs' injuries").[7]

The only case cited by Adeia that is directed to a patent dispute is *In re Qualcomm Litig.*, No. 17-cv-00108-GPC-MDD, 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017). *See* Dkt. No. 38, at 7-8. In that case, the original complaint included a group of patents referred to as the "Original Patents-in-

[7] Adeia also cites *Apple Inc. v. Qualcomm Inc.*, 992 F.3d 1378 (Fed. Cir. 2021), which relates to standing in the context of an inter partes review (IPR). *See* Dkt. No. 38, at 8. In that case, the parties reached a six-year worldwide settlement between the IPR and appeal, and thus, there was no standing for *Apple* with respect to the Board's final written decision. *See Apple*, 992 F.3d at 1381-82. The Federal Circuit held that "[b]ecause the validity of the challenged patents would not impact Apple's ongoing payment obligations, the reasoning of *MedImmune* does not apply." *Id.* at 1384. The facts of the present action are distinguishable because: (1) DIRECTV identified a particular set of patents that will significantly impact the parties' positions; and (2) there has been no new license following the filing of this action. *See id.* ("Apple's assertions amount to little more than an expression of its displeasure with a license provision into which it voluntarily entered. Such allegations do not establish Article III standing").

Suit" and an amended complaint included a separate group of patents referred to as the "Additional Patents-in-Suit." *See In re Qualcomm Litig.*, 2017 WL 5985598 at *12. The district court assessed whether there was Article III standing for a declaratory judgment action against the Additional Patents-in-Suit, determining that under "all the circumstances" after applying the relevant factors, there was no affirmative act sufficient to warrant declaratory judgment jurisdiction. *See id.* at *14-*19. Notably, Qualcomm did not seek to dismiss the Original Patents-in-Suit. *See id.* at *13. As such, the declaratory judgment action proceeded on a subset of the larger portfolio (e.g., excluding the Additional Patents-in-Suit) even though that subset was part of the same "chart consisting of 1,975 pages of patent numbers, for over three thousand U.S. and Chinese patent families." *Id*. at *13, *23 n. 21 (citations omitted). This case supports DIRECTV, not Adeia, by showing that a case addressing a subset of patents in a large portfolio is consistent with finding redressability. There is nothing legally improper with adjudicating a subset of the patents in Adeia's portfolio, and it is certainly not "fatal under Article III" as suggested by Adeia. Dkt. No. 38, at 7; *see also SanDisk*, 480 F.3d at 1374 (declaratory judgment action with respect to 14 patents in a "sizeable portfolio"). At base, Adeia's argument is that its large patent portfolio insulates it from a declaratory judgment action on a subset of its patents, even where that subset has real significance to the parties' dispute. That argument should be rejected because it is neither supported by the cases Adeia cites nor by the facts in this case.

**B.**    **The Complaint Pleads Facts Sufficient to Support An Injury-in-Fact for Declaratory Judgment Jurisdiction**

The question of subject matter jurisdiction under the Declaratory Judgement Act must be assessed "under all the circumstances." *Hewlett-Packard*, 587 F.3d at 1361 (quoting *MedImmune*, 549 U.S. at 127); *see also SanDisk*, 480 F.3d at 1381 ("We need not define the outer boundaries of declaratory judgment jurisdiction, which will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case"). Yet Adeia largely ignores the most salient facts: those regarding the extensive licensing history between the parties, and

thus, the implications of the parties' then-current license expiring on December 31, 2025. With the license expiring, "there [was] a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (cleaned up). That is, there was an injury-in-fact sufficient to confer jurisdiction. *See 3M*, 673 F.3d at 1377.

### 1.     Adeia's Demands that DIRECTV License Its Portfolio Constitute an Affirmative Act

Adeia demanded that DIRECTV enter a new license agreement as the existing agreement with its former parent was about to expire. This affirmative act, from which DIRECTV could reasonably infer Adeia's intent to enforce its patent rights upon license expiration, is alleged in the Complaint:

> Despite expiration of the core patents in Adeia's media portfolio, as the end of the AT&T Agreement approached, Adeia demanded that DIRECTV once again enter a license agreement for the Adeia portfolio and pay very substantial royalties for those patents. Adeia has consistently informed DIRECTV that it would need a license to the Adeia patent portfolio after the AT&T Agreement expires.

Dkt. No. 1, ¶ 19; *see also id.* at ¶ 22 ("Adeia has not given DIRECTV any reason to doubt that unless DIRECTV agrees to enter into a license agreement, Adeia will seek to pursue legal action for patent infringement damages from DIRECTV"). Similar allegations are contained elsewhere the Complaint:

> Adeia has asserted that DIRECTV requires a license to its media patent portfolio, which includes the Patents-in-Suit. Adeia has also asserted that DIRECTV needs to agree to a license with Adeia, once the current AT&T license agreement expires on December 31, 2025, because DIRECTV infringes patents in Adeia's media portfolio, including the Patents-in-Suit.

*Id.* at ¶ 3; *see also id.* at ¶ 26 ("Despite discussions between the parties, no agreement has been reached to resolve their dispute"). Adeia itself notes that the parties also engaged in additional discussions that were subject to a non-disclosure agreement. *See* Dkt. No. 38 at 3, n.1.

These facts, when viewed against a backdrop of a decades-long requirement of a license by Adeia, constitute "a course of conduct [by Adeia] that shows a preparedness and willingness to enforce its patent rights." *SanDisk*, 480 F.3d at 1383; *see also ABB Inc. v. Cooper Indus., LLC*, 635 F.3d

1345, 1348 (Fed. Cir. 2011) ("[A] specific threat of infringement litigation by the patentee is not required to establish jurisdiction") (quoting *Hewlett–Packard*, 587 F.3d at 1362). "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk,* 480 F.3d at 1381. This is precisely the course of conduct by Adeia that DIRECTV faced with expiration of its license because of Adeia's continuing assertions that DIRECTV needed a license to the Adeia media patent portfolio to continue operating its business after December 31, 2025.

The Northern District of California has found declaratory judgment jurisdiction based on the expiration of a license with respect to Adeia's corporate predecessors on facts largely analogous to the facts here. *See Hulu LLC v. Rovi Corp.*, No. 17-CV-02942-JD, 2017 WL 3535031, at *1 (N.D. Cal. Aug. 16, 2017) ("The defendants in this case are Rovi Corporation, Rovi Guides, Inc. and TiVo Corporation").[8] In that case, Hulu's license expired and the defendants (Adeia's corporate predecessors) asserted by letter that "the circumstances which required Hulu to be licensed under the Agreement continue to exist today, and accordingly, it is necessary that Hulu renew its license." *Id*. As in this case, "[t]he gravamen of defendants' jurisdictional objection is that they did not make 'any specific threat of litigation regarding the [patent]' to Hulu." *Id*. The district court rejected this argument, finding that the totality of the facts were "more than enough to find a live case and controversy between the parties." *Id.* at *2. The district court also noted the Federal Circuit's observation that *MedImmune* "certainly" lowered the bar for determining declaratory judgment jurisdiction "in the licensor-licensee context," and that such jurisdiction "cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" *Id.* (citing *Hewlett-Packard*, 587 F.3d at 1361-63).

Like Hulu, DIRECTV is not required to simply wait until it gets sued following expiration of

---

[8] Adeia's relationship to its predecessors is discussed in the Complaint. *See* Dkt. No. 1, ¶¶ 7-14.

its license, all while accruing damages for patent infringement. *See MedImmune*, 549 U.S. at 137 (holding that a licensee is not required to "break or terminate its [] license agreement before seeking a declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed"); *see also Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 201 (2014). As explained by the Federal Circuit, forcing a party to choose between a "growing potential liability" or abandoning its activities is "precisely" the type of "dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008) (quoting *MedImmune*, 549 U.S. at 129).

### 2.    The *Cepheid* Factors Further Demonstrate Subject Matter Jurisdiction

In support of its argument regarding injury-in-fact, Adeia purports to apply the factors from *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013), incorrectly asserting that "DIRECTV's allegations do not satisfy a single one."[9] Dkt. No. 38, at 9. In doing so, Adeia ignores the most relevant factors and the larger context of the parties' history and the impending license expiration. When all circumstances surrounding the parties' relationship are considered, the *Cepheid* factors support a determination that the Court has subject matter jurisdiction over this action.

---

[9] These factors include: "(1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is simply a holding company with no source of income other than enforcing patent rights; (9) whether the patentee refused to give assurance it will not enforce its patent; (10) whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by" the plaintiff appear as an attempt to create a controversy. *ActiveVideo Networks, Inc. v. TransVideo Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1087-88 (N.D. Cal. 2013) (citing *Cepheid*, 2013 WL 184125, at *6).

        a.      **Factor 3 ("whether the patent holder imposed a deadline to respond")**

DIRECTV and Adeia's predecessors had been in continuous licensing relationships for decades. *See* Dkt. No. 1, ¶¶ 15-16.  The previous license was set to expire on December 31, 2025, and Adeia was requiring DIRECTV to renew its license upon expiration. *See id.*, ¶ 19 ("Adeia has consistently informed DIRECTV that it would need a license to the Adeia patent portfolio after the AT&T Agreement expires").  Adeia itself states that it needs to obtain renewals of licenses upon their expiration to maintain its licensing revenue. *See* Adeia 10-K at 11 ("[u]pon expiration of such agreements, we need to renew or replace these agreements in order to maintain our revenue base").  Adeia thus effectively imposed a deadline on DIRECTV to either file this action or subject itself to potential liability for sale of its products and services upon expiration of the license; imposition of a deadline is a factor that supports Article III jurisdiction under the prevailing case law. *See, e.g.*, *Hewlett-Packard*, 587 F.3d at 1362-63; *Ebates Performance Mktg., Inc. v. MyMail, Ltd.*, No. 20-cv-04768-LHK, 2021 WL 121130, at *7 (N.D. Cal. Jan. 13, 2021) (deadline to respond factor weighed in Plaintiffs' favor as Defendant's letter warned Plaintiffs that if they "missed that deadline, Defendant's attorney would turn his files over to litigation counsel"); *3M*, 673 F.3d at 1380  ("While a patentee's imposition of a deadline is a circumstance to consider under a *MedImmune* analysis," the Federal Circuit has "found that declaratory judgment jurisdiction existed in cases in which the patentee's communications did not impose strict deadlines"); *ActiveVideo Networks*, 975 F. Supp. 2d at 1088 (the "Federal Circuit has noted that the fact that the patentee does not impose a deadline to respond to its communication is not dispositive").  In other words, there was a controversy of "**sufficient immediacy** and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (emphasis added).

        b.      **Factor 4 ("any prior litigation between the parties") and Factor 5 ("the patent holder's history of enforcing the patent at issue")**

There is no prior litigation between the parties, but not because Adeia never asserted its patents directly against DIRECTV.  Rather, it is because DIRECTV had previously capitulated to Adeia's demands and was a licensee.  Moreover, as stated in the Complaint, "Adeia has a well-established history and practice of suing companies that refuse to license its patent portfolio."  Dkt. No. 1, ¶ 20 (noting litigations against Disney and AMD); *see also* Dkt. No. 38, at 10-11 (same). Examples of litigation relating to Adeia's patent enforcement efforts include the following:

- Adeia sued Comcast Corporation in January 2018 in district court, and in April 2019 in the International Trade Commission for infringement of patents, including U.S. Patent Nos. 8,156,528 (the "'528 Patent") and 9,578,363 (the "'363 Patent").[10] *See Rovi Guides, Inc. v. Comcast Corporation*, Case No. 2-18-cv-00253 (C.D.C.A. January 10, 2018); *Certain Digital Video Receivers, Broadband Gateways, and Related Hardware and Software Components*, Inv. No. 337-TA-1158, ITC-337-TA-1158).

- Adeia licensee, Altice USA, Inc., filed a declaratory judgment action against Adeia in July 2025 asserting non-infringement of ten patents, including U.S. Patent Nos. 10,506,010 (the "'010 Patent") and 8,601,526 ("'526 Patent").[11] *See Altice USA, Inc. et al v. Adeia Inc. et al*, Case No. 1-25-cv-05390, (S.D.N.Y. June 27, 2025).

- Another Adeia licensee, X Corp. ("X"), filed a declaratory judgment action in November 2023 against Adeia asserting non-infringement of four patents relating to video streaming technology. *See X Corp. v. Adeia Inc. et al*, Case No. 3-23-cv-06151 (N.D.C.A. November 28, 2023).

- Adeia sued The Walt Disney Company ("Disney") in November 2024 asserting infringement of six patents involving video streaming technology. In Adeia's complaint in that action, it identified DIRECTV as a licensee whose licensing of its media portfolio supported its claims against Disney. *See Adeia Technologies Inc. et al v. The Walt Disney Company et al*, 1-24-cv-01231 (DDE), Complaint at ¶ 21.

Adeia's prior litigation conduct, including with respect to other media companies and the Patents-in-Suit, supports a finding that the pending expiration of the license created an actual

---

[10] In the present action, DIRECTV asserts that it does not infringe the '528 Patent and U.S. Patent No, 8,234,668, which is related to the '363 Patent.

[11] In the present action, DIRECTV asserts that it does not infringe either the '010 Patent or the '526 Patent.

controversy. *See, e.g.*, *Ebates*, 2021 WL 121130, at *7 (finding that subject matter jurisdiction existed based in part on patent owner's assertion history); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) ("Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy"); *ABB*, 635 F.3d at 1349 (describing application of *MedImmune* standard "in finding an infringement controversy where the declaratory defendant had sent veiled warnings to the declaratory plaintiff and had already sued other companies that produced the same product accused of infringement") (citing *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 899–901 (Fed. Cir. 2008)).

Events after the filing of the Complaint lend further credence to DIRECTV's expectation that it would be sued on the Patents-in-Suit following expiration of the license. Adeia sued DISH Network Corporation ("DISH") on March 31, 2026, asserting infringement of five patents involving MVPD and streaming technology. DISH is identified as a former licensee of Adeia's MVPD technology in the "Adeia Inc., Annual Report (Form 10-K)." *See* Adeia 10-K.[12]

c.    **Factor 6 ("whether the patent holder's threats have induced the alleged infringer to change its behavior")**

With respect to this factor, Adeia argues that "[t]he Complaint alleges no conduct by DIRECTV that changed in response to any supposed threat." Dkt. No. 38, at 11. Because DIRECTV was a licensee, it had already changed its behavior by agreeing to pay substantial royalties to avoid infringement claims for these patents. Any need for DIRECTV to change its behavior (or not) after the expiration of the applicable license will be determined by the outcome of this action.

---

[12] DISH filed a declaratory judgment action on April 1, 2026, against Adeia asserting non-infringement and invalidity of the same ten patents as this case. DISH similarly alleged that "DISH has reason to expect that if it does not agree to a license agreement with Adeia and continues selling its DISH Products and Services, that it is at imminent risk of being sued by Adeia for patent infringement." Complaint at ¶ 66, *Dish Network L.L.C. et al. v. Adeia Inc. et al.*, 3-26-cv-02811 (N.D. Cal.).

### d.        Factor 8 ("whether the patent holder is simply a holding company with no source of income other than enforcing patent rights")

This factor strongly supports the conclusion that DIRECTV would expect that, absent a license or judicial action, Adeia will enforce its patents.  Adeia is a patent holding company, and thus, "without enforcement it receives no benefits from its patents." *Hewlett-Packard*, 587 F.3d at 1364.

Adeia Guides Inc. was formerly known as Rovi Guides Inc., and Adeia Media Solutions Inc. was formerly known as TiVo Solutions Inc.; both are wholly owned subsidiaries of Adeia Inc.  *See* Dkt. No. 1,  ¶¶ 7-11.  And as explained in the Complaint:

> In or around 2016, Rovi completed its acquisition of TiVo and changed its name to TiVo Corporation. At the time of the merger, Rovi and TiVo collectively had a worldwide portfolio of over 6,000 issued patents and pending applications. Both companies had monetized their intellectual property, with more than $3 billion in combined IP licensing revenues and past damage awards. In or around June 2020, Xperi Holding Corp. ("Xperi Holding"), another corporation organized under the laws of Delaware, merged with TiVo Corporation to create "one of the industry's largest and most diverse intellectual property (IP) licensing platforms."

*Id.* at ¶ 14.  That is, Adeia is not just a patent holding company, it is one of the largest IP licensing companies in the world.  *See id.*; *see also* Dkt. No. 38, at 2 ("Backed by a portfolio of over 13, 000 patents and patent applications worldwide") (noting the Xperi Inc. company timeline).

The foregoing is confirmed in the "Adeia Inc., Annual Report (Form 10-K)" cited by Aedia in its motion to dismiss.  *See* Dkt. No. 38, at 2 (citing Adeia 10-K).  For instance, the cited report: (1) describes Adeia as "a leading IP licensing platform in the consumer and entertainment space" in its Business Overview (Adeia 10-K at 31); (2) explains how Adeia licenses its patent portfolio in various segments (e.g., "Media IP Licensing") (*see id.* at 60-61); and (3) states that Adeia's business has only "one reportable segment: IP Licensing" that derives revenue (*id.* at 80-81).  As summarized by Adeia, "[w]e derive the majority of our revenue from the licensing of our IP rights to customers."  *Id.* at 39.  And given the significance of that licensing revenue, Adeia states that it "expect[s] that litigation expense will continue to be a significant portion of our operating expenses, as it is used to enforce and

protect our IP and contract rights. *Id.* at 33-34; *see also Micron*, 518 F.3d at 901 ("[Patent Owner's] recent public statements and annual reports also confirm its intent to continue an aggressive litigation strategy"). When negotiating with a patent holding company with a large litigation budget such as Adeia, enforcement is the only reasonable expectation. *See Hewlett-Packard*, 587 F.3d at 1363 (reversing grant of motion to dismiss declaratory judgment action because, *inter alia*, correspondence "from a non-competitor patent holding company ... may invoke a different reaction than would a meet-and-discuss inquiry by a competitor, presumably with intellectual property of its own to place on the bargaining table").

> **e.    Factor 9 ("whether the patentee refused to give assurance it will not enforce its patent")**

As stated in the Complaint, "Adeia has not given DIRECTV any reason to doubt that unless DIRECTV agrees to enter into a license agreement, Adeia will seek to pursue legal action for patent infringement damages from DIRECTV." Dkt. No. 1, ¶ 22. Adeia does not dispute that it has offered no assurances that it will not enforce the Patents-in-Suit. *See* Dkt. No. 38, at 11.

> **f.    Factor 11 ("the extent of the patent holder's familiarity with the product prior to suit") and Factor 12 ("the length of time that transpired after the patent holder asserted infringement")**

Adeia and its predecessors have asserted for decades that DIRECTV requires a license for its products and services. *See* Dkt. No. 1, ¶¶ 15-17. This level of familiarity, and the length of time that the parties have been in a licensor-licensee relationship, are analogous to *Cepheid* Factors 11 and 12, both of which support DIRECTV's position. Moreover, as explained above, Adeia has publicly alleged that it has engaged in hours of analysis regarding DIRECTV's products (and asserts that its analysis is sufficiently detailed and laborious to allegedly qualify for treatment as trade secrets).

> **g.    Remaining Considerations (Factors 1, 2, 7, 10, and 13)**

Factors 1, 2, 7, 10, and 13 relate to the specific details of typical communications between parties before a declaratory judgement action is filed. However, as noted by Adeia, in this particular case the details of any such negotiations between the parties were "subject to a non-disclosure agreement." Dkt. No. 38, at 3 n.1. Nonetheless, several of these factors also weigh in favor of jurisdiction here. For example, although DIRECTV did not disclose the details of any infringement analysis performed by Adeia because of the parties' non-disclosure agreement, Adeia has admitted that it performed an extensive analysis and, therefore, factor 2 weighs in favor of jurisdiction. *See supra*, at II.C. Likewise, although DIRECTV has not catalogued in the Complaint all the communications between Adeia and DIRECTV, the extensive nature of the licensing relationship and the numerous communications between the parties described in the Complaint, and admitted by Adeia, shows that Adeia contacted DIRECTV multiple times as contemplated by factor 7. Finally, Adeia does not provide any basis to support a conclusion that DIRECTV was in any way initiating communications "as an attempt to create a controversy" as contemplated by factor 13.

The standing analysis "is not a bright line inquiry, but dependent upon the facts in each case." *Cepheid*, 2013 WL 184125, at *6 (citing *MedImmune*, 549 U.S. at 127). The facts of this case—and in particular the facts regarding the parties' history and impending expiration of the license agreement—demonstrate a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *See id.*; *see also Ameranth, Inc. v. ChowNow, Inc.*, No. 20-cv-2167-BEN-BLM, 2021 WL 3686056, at *19 (S.D. Cal. Aug. 19, 2021) ("The *MedImmune* 'all the circumstances' analysis is 'calibrated to the particular facts of each case'") (quoting *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012)). For these reasons, the *Cepheid* factors analysis also supports declaratory judgment jurisdiction here.

C.    **Discretionary Factors Support Denial of Defendants' Motion**

The purpose of a declaratory action is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the

commencement of legal action by the other side." *Capo, Inc. v. Dioptics Med. Prods. Inc.*, 387 F.3d 1352, 1354 (Fed. Cir. 2004) (quoting *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993)).  When this purpose is achieved—as it is in this case—discretionary dismissal "is rarely proper."  *Id.* at 1355 ("There must be well-founded reasons for declining to entertain a declaratory judgment action").  Neither of Adeia's two arguments in support of its assertion that the Court should exercise its discretion and decline jurisdiction presents a sound basis for doing so.

First, Adeia argues that DIRECTV is seeking a tactical advantage by preemptively "forum shopping," and thus, the Court should decline jurisdiction.  Dkt. No. 38, at 14-16, *see also id.* at 1 ("anticipatory forum shopping").  But Adeia fails to acknowledge (or even mention) that the Northern District of California is its home forum.  *See* Dkt. No. 1, ¶¶ 7-11 (each of the Adeia entities has its principal place of business in San Jose, California).   Adeia offers no plausible basis to assert that litigating in its home forum is somehow onerous, or in any way fails to serve the purposes of the Declaratory Judgment Act.  *See Micron*, 518 F.3d at 904 ("[T]he trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums"); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011) (declining to find an exception to the first-filed rule because there was "no evidence of forum shopping" as Plaintiff did not "choose a forum with no relevance to the parties, so as to suggest the possibility of forum-shopping," and instead, Plaintiff "filed suit in the district in which it makes the accused products and in which **[Defendant] LSI is headquartered**"); *Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 411-413 (S.D.N.Y. 2010) (finding Plaintiffs did not engage in forum shopping as Plaintiffs "had several valid reasons for selecting this district, including the fact that **[Defendant] PixFusion's only corporate office is located here** and the patents-in-suit were prosecuted by attorneys who live and work in this district"); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (the "more it appears that a… plaintiff's choice of forum has been dictated

by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice") (emphases added).

Second, Adeia reiterates its arguments regarding the alleged lack of an affirmative act, with an emphasis on DIRECTV's "decision to sue during the term of its own license." *See* Dkt. No. 38, at 16; *see also id.* at 14 ("it sued first, while fully covered by the license"), at 15 ("DIRECTV initiated this suit while still a licensee…."). But the Supreme Court has made clear that DIRECTV was under no obligation to wait until the expiration of the license to bring this action. *See MedImmune*, 549 U.S. at 137; *see also Medtronic*, 571 U.S. at 203 ("'[l]icensees may often be the only individuals with enough economic incentive' to litigate questions of a patent's scope") (quoting *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969)).

In summary, DIRECTV is not attempting to "manufacture a controversy" or "litigate an abstract," as Adeia suggests. Dkt. No. 38, at 14-15. Rather, DIRECTV did precisely what the Supreme Court has authorized licensees to do—it raised a real and immediate dispute between the parties. Adeia cannot reasonably assert such a course of action fails to "serve the objectives for which the Declaratory Judgment Act was created." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996)). Indeed, the "very purpose" of the Declaratory Judgment Act is to "ameliorate" the "'dilemma' posed by 'putting' one who challenges a patent's scope 'to the choice between abandoning his rights or risking' suit." *Medtronic*, 571 U.S. at 201 (citing *MedImmune*, 549 U.S. at 129).

## V.    **CONCLUSION**

DIRECTV respectfully submits that the motion to dismiss should be denied. The Court has subject-matter jurisdiction over this declaratory judgment action and no discretionary factors warrant declining such jurisdiction. Alternatively, DIRECTV requests leave to amend its complaint.

Dated: April 10, 2026          By:    */s/ Sharon L. Davis*

Ryan K. Yagura
Xin-Yi Zhou
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Sharon L. Davis (admitted *pro hac vice*)
Michael H. Jones (admitted *pro hac vice*)
Bryan B. Thompson (admitted *pro hac vice*)
Benjamin Fishman (admitted *pro hac vice*)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031

*Attorneys for Plaintiff DIRECTV, LLC*