# EXHIBIT 17

RYAN K. YAGURA (CA S.B. #197619)
ryagura@omm.com
XIN-YI ZHOU (CA S.B. #251969)
vzhou@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, California 90071
Telephone: +1 213 430 6000

SHARON L. DAVIS (pro hac pending)
MICHAEL H. JONES (pro hac pending)
BRYAN B. THOMPSON (pro hac pending)
BENJAMIN FISHMAN (pro hac pending)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: +1 202 783 6040

*Attorneys for Plaintiff DIRECTV, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DIRECTV, LLC<br><br>Plaintiff,<br><br>v.<br><br>ADEIA, INC., ADEIA GUIDES INC., ADEIA MEDIA HOLDINGS LLC, ADEIA TECHNOLOGIES INC. AND ADEIA MEDIA SOLUTIONS, INC.,<br><br>Defendants. | Case No. 3:25-cv-11048-JSC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DIRECTV, LLC ("DIRECTV") for its First Amended Complaint for Declaratory Judgment against Defendants Adeia Inc., Adeia Guides Inc., Adeia Media Holdings LLC, Adeia Technologies Inc., and Adeia Media Solutions Inc. (collectively "Adeia"), with knowledge as to its own acts and status, and upon information and belief as to the acts and status of others, by and through its undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1.   This is an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.  DIRECTV seeks a declaratory judgment of noninfringement of each of U.S. Patent Nos. 10,506,010 (the "'010 Patent"), 8,805,418 (the "'418 Patent"), 11,778,245 (the "'245 Patent"), 10,110,961 (the "'961 Patent"), 9,715,334 (the "'334 Patent"), 8,156,528 (the "'528 Patent"), and 8,601,526 (the "'526 Patent").  DIRECTV further seeks a declaratory judgment of invalidity of each of U.S. Patent Nos. 8,640,165 (the "'165 Patent"), 8,234,668 (the "'668 Patent"), and 12,301,922 (the "'922 Patent"). These patents are collectively referred to herein as the "Patents-in-Suit."

2.   EachOn information and belief, each of the Patents-in-Suit is owned by Adeia.

3.   Adeia has asserted that DIRECTV requires a license to its media patent portfolio, which includes the Patents-in-Suit.  Adeia has also asserted that DIRECTV needs to agree to a license with Adeia, oncewith the current AT&T license agreement expireshaving expired on December 31, 2025, because DIRECTV infringes patents in Adeia's media portfolio, including the Patents-in-Suit.

4.   DIRECTV does not infringe any valid claims of the Patents-in-Suit, either currently or going forwardby continuing to offer its current products and services.

5.  An actual and justiciable controversy exists under 28 U.S.C. §§ 2201–2202 between DIRECTV and Adeia as to whether DIRECTV infringes any valid claims of the Patents-in-Suit.

**THE PARTIES**

6.   Plaintiff DIRECTV is a California limited liability company with its principal place of business at 2260 E Imperial Hwy, El Segundo, ~~CA~~California 90245-3504.

7.   Defendant Adeia Inc. is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134.

8.   Defendant Adeia Guides Inc. (f/k/a Rovi Guides Inc.) is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134.  Adeia Guides Inc. is a wholly owned subsidiary of Adeia Inc.

9.   Defendant Adeia Media Holdings LLC is a Delaware limited liability company, with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134.  Adeia Media Holdings LLC is a wholly owned subsidiary of Adeia Inc.

10. Defendant Adeia Technologies Inc. is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134.  Adeia Technologies Inc. is a wholly owned subsidiary of Adeia Inc.

11. Defendant Adeia Media Solutions Inc. (f/k/a TiVo Solutions Inc.) is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134.  Adeia Media Solutions Inc. is a wholly owned subsidiary of Adeia Inc.

12. Adeia is a publicly traded patent holding company with more than $440 million in annual revenue, essentially all of which comes from licensing its patent portfolio. *See, e.g.*, Form 10-K at 11 (["[w]e derive our revenue from the licensing of our patents and other intellectual property") (*available at* https://investors.adeia.com/static-files/7a353da1-b418-444b-9a3c-85ee182bbb16) ("Adeia 10-K") (Ex. 1).  The report: (1) describes Adeia as "a leading IP licensing platform in the consumer and entertainment space" in its Business Overview (Adeia 10-K at 31); (2) explains how Adeia licenses its patent portfolio in various segments (e.g., "Media IP licensing") (*see id.* at

60-61); and (3) states that Adeia's business has only "one reportable segment: IP Licensing" that derives revenue (*id.* at 80-81). As summarized by Adeia, "[w]e derive the majority of our revenue from the licensing of our IP rights to customers." *Id.* at 39. Adeia further states that it "expect[s] that litigation expense will continue to be a significant portion of our operating expenses, as it is used to enforce and protect our IP and contract rights." *Id.* at 33-34. Adeia asserts that it has licensed over 80 percent of the U.S. Pay TV market to its media patent portfolio. *See Adeia's Investor Deck*, at 14, May 2026, *(available at* https://investors.adeia.com/static-files/e6d60e30-9b31-4655-8a1d-6497c56554ad) (Ex. 2).

13. DIRECTV, pursuant to the license entered by AT&T (its parent at the time), was a significant Adeia licensee.

## DEFENDANTS' CORPORATE PREDECESSORS

14. 12. Rovi Corporation ("Rovi") was a corporation existing under the laws of the State of Delaware. Further, Rovi was the parent corporation to Rovi Guides, Inc. ("Rovi Guide").

15. 13. TiVo, Inc. ("TiVo") was a corporation existing under the laws of the State of Delaware. TiVo was the parent corporation to TiVo Solutions Inc. ("TiVo Solutions").

16. 14. In or around 2016, Rovi completed its acquisition of TiVo and changed its name to TiVo Corporation. At the time of the merger, Rovi and TiVo collectively had a worldwide portfolio of over 6,000 issued patents and pending applications. Both companies had monetized their intellectual property, with more than $3 billion in combined IP licensing revenues and past damage awards. In or around June 2020, Xperi Holding Corp. ("Xperi Holding"), another corporation organized under the laws of Delaware, merged with TiVo Corporation to create "one of the industry's largest and most diverse intellectual property (IP) licensing platforms."

17. In or around 2022, Xperi Holding announced the separation of Adeia from Xperi Holding, identifying Adeia as "the intellectual property (IP) business of Xperi." *See* Xperi Appoints Paul E.

Davis as CEO of IP Licensing Business at Spinoff, May 25, 2022 (*available at* https://investors.adeia.com/news-releases/news-release-details/xperi-appoints-paul-e-davis-ceo-ip-licensing-business-spinoff) ("Adeia will be the leading independent IP licensing business") (Ex. 3).

18.  Adeia and its corporate predecessors have a well-established history and practice of suing television providers, and those in related industries, that refuse to license its patent portfolio, including bringing patent infringement lawsuits against Comcast Corporation and The Walt Disney Company to assert patents from its media patent portfolio.

<strong><u>BACKGROUND</u></strong>

**A.  <u>Relationship and Licensing History Between the Parties</u>**

19. The parties have a significant licensing history that spans more than three decades.

20. ~~15.~~ DIRECTV first entered a license agreement with Adeia's corporate predecessors in 1994.  The primary basis for entering that license agreement was the portion of the Adeia portfolio that related to the operation of Multichannel Video Programming Distributor ("MVPD") technology for delivery of cable television to user homes.

21. ~~16.~~ When that initial license agreement expired on January 1, 2016, DIRECTV was a wholly owned subsidiary of AT&T.  AT&T, for itself and its subsidiaries, entered a seven-year license agreement with Adeia's predecessor Rovi Corporation for its patent portfolio on December 15, 2015, effective beginning on January 1, 2016 ("the AT&T Agreement").  The AT&T Agreement was then amended on September 1, 2017, to add three additional years.  ~~The AT&T Agreement expires on December 31, 2025.~~

22. The license agreement expired on December 31, 2025.

23. ~~17.~~ The patents that formed the core of the valuation of Adeia's portfolio in 2016 and before are now expired.  For example, as shown in Adeia's November 2025 Investor Deck, its

Electronic Program Guide, DVR, and Video on Demand inventions date from the 1990s. *See* Ex. 4 at p. 12. Thus, the patents arising from those inventions are now largely expired. DIRECTV paid license fees for those patents up through their expiration dates pursuant to its earlier license agreements.

24. ~~18.~~ According to Adeia's November 2025 Investor Deck, while those older, now-expired patents allowed Adeia to license approximately 90 percent of the ~~MVPD~~Pay-TV market, it has licensed only about 30 percent of the over the top (OTT) steaming market ~~and only 10 percent of the social media market.~~. *Id.* at p. 14.

25. ~~19.~~ Despite expiration of the core patents in Adeia's media portfolio, as the end of the AT&T Agreement approached, Adeia demanded that DIRECTV once again enter a license agreement for the Adeia portfolio and pay very substantial royalties for those patents. Throughout multiple communications and meetings between Adeia and DIRECTV beginning in 2024, Adeia has consistently informed DIRECTV that it would need a license to the Adeia patent portfolio after the AT&T Agreement expires. As such, the expiration date of the agreement (December 31, 2025) operated as an imposed deadline for DIRECTV to either agree to a new license or run the risk of incurring damages for the alleged infringement.

~~20. Adeia has a well-established history and practice of suing companies that refuse to license its patent portfolio. For example, in November 2024, Adeia filed a patent infringement suit against The Walt Disney Company and its affiliates asserting infringement of six of its patents relating to media streaming and content delivery technology. On November 3, 2025, Adeia filed a patent infringement suit against Advanced Micro Devices, Inc. asserting infringement of ten patents.~~

26. ~~21.~~ Based on Adeia's position that DIRECTV requires a license to the patents in the Adeia media portfolio that are potentially relevant to DIRECTV's business, and further based on Adeia's history of bringing patent infringement lawsuits against those companies that do not acquiesce to

its demands seeking substantial ~~damages~~royalties, DIRECTV ~~desires to resolve the issue of whether it infringes~~seeks a declaratory judgment that it does not infringe any valid claim of ~~Adeia's remaining patents in its media portfolio~~the Patents-in-Suit to avoid running the risk of incurring damages for ~~said~~ infringement of those patents .

27. ~~22.~~ Adeia has not given DIRECTV any reason to doubt that unless DIRECTV agrees to enter into a license agreement, Adeia will ~~seek to~~ pursue legal action for patent infringement damages from DIRECTV. That is, Adeia has offered no assurances that it will not enforce the Patents-in-Suit. To the contrary, Adeia asserted that DIRECTV needed a license once the then-current license expired on December 31, 2025, because DIRECTV continued to infringe patents in Adeia's media portfolio and requested that DIRECTV enter a non-disclosure agreement. Specific details of the parties' correspondence, including the content of Adeia's "confidential analysis" and other materials, are subject to a non-disclosure agreement. *See* Ex. 5 (Redacted Complaint, *Adeia Inc. v. DIRECTV, LLC*, 1:26-cv-00238-AT (SDNY Jan. 12, 2026), Dkt. 1), ¶¶ 24-28, 30-44, 45-62.

28. Adeia has admitted that its "confidential analysis" was sent to DIRECTV. Adeia has further admitted that this analysis was sufficiently tied to the Patents-in-Suit to allege that DIRECTV used it "as a blueprint to construct [this] DJ action." Ex. 6 (Adeia's Memorandum of Law in Support of its Proposed Order to Show Cause for Preliminary Injunction, *Adeia Inc. v. DIRECTV, LLC*, 1:26-cv-00238-AT (SDNY Jan. 16, 2026), Dkt. 22) at p. 8; *see also id.* at p. 11 ("To prepare its declaratory judgment action, DIRECTV used this Confidential Information.").

29. Despite discussions between the parties, no agreement has been reached to resolve their dispute.

**B. Public Statements by Adeia Regarding the Patents-in-Suit**

30. On December 29, 2025, DIRECTV filed its Complaint for Declaratory Judgement (the "Original Complaint").

31. After DIRECTV filed the Original Complaint, Adeia brought suit in the Southern District of New York (the "SDNY Case") alleging that DIRECTV violated the terms of the non-disclosure agreement between the parties and misappropriated Adeia's trade secrets. *See Adeia Inc. v. DIRECTV, LLC*, 1:26-cv-00238-AT (SDNY Jan. 12, 2026). DIRECTV denies these allegations.

32. A redacted copy of the complaint in the SDNY Case is attached as Exhibit 5 and incorporated fully herein.

33. Through its public filings in the SDNY Case, Adeia has indicated that during the parties' licensing negotiations it provided its "confidential analysis" to DIRECTV and that analysis allowed DIRECTV to select the particular Patents-in-Suit.

34. As Adeia explained in its complaint in the SDNY Case, "[l]eading up to the expiration of DIRECTV's license, Adeia and DIRECTV engaged in business discussions regarding whether DIRECTV would renew its license to Adeia's media patent portfolio." Ex. 5 at ¶ 22. Adeia alleges that "DIRECTV used Confidential Information, as defined, to prepare its December 29, 2025 Declaratory Judgment Action." *Id.* at ¶ 28; *see also id.* at ¶ 73 ("DIRECTV's (itself and through its Representatives) use of Adeia's Confidential Information to prepare its Declaratory Judgment action constitutes a material breach of the NDA.").

35. Adeia's complaint in the SDNY Case states the following:

> After signing the NDA, Adeia drew DIRECTV's attention to [redacted]. Pursuant to the NDA, Adeia provided its own confidential internal analysis of [redacted].
> DIRECTV knew about [redacted] only because Adeia shared this information

pursuant to the NDA . . . .  This confidential analysis of [redacted]. These materials spanned hundreds of pages of Adeia's confidential analysis.

Ex. 5 at ¶¶ 30-31; *see also id.* at ¶ 54 ("The identification of [redacted] reflected significant efforts and analysis from Adeia.").

36. The SDNY Case Complaint further states:

Without this information, it is unlikely a litigant like DIRECTV would have filed a declaratory judgment action.  Without [redacted] under the NDA, DIRECTV would have had to guess which patents to include in any declaratory relief action against Adeia.  Filing a declaratory relief action on thousands of issued U.S. patents would be impractical, if not impermissible.  Without access under the NDA [redacted], DIRECTV would have had no realistic way of selecting the ten specific patents it included in its Declaratory Judgment Action.

Ex. 5 at ¶ 50.

37. Other public statements by Adeia confirm the same points.  For instance, in its Motion for a Preliminary Injunction (which has been denied)Adeia argued that DIRECTV's non-infringement positions in the Original Complaint for seven of the Patents-at-Issue were "derived from Adeia's confidential information."  Ex. 6 (SDNY Case, Dkt. 22) at p. 8.  Adeia likewise stated that "DIRECTV's complaint is instead based on and supported extensively by use of Adeia's Confidential Information."  *Id.* at p. 15; *see also id.* at p. 8 ("DIRECTV's complaint used Adeia's Confidential Information as a blueprint to construct its DJ action. For example, Adeia's media portfolio comprises over 4,000 issued U.S. patents. Yet DIRECTV's DJ action includes only ten.").  Adeia summarized its position as follows: "[Adeia] provided its confidential analysis of [redacted], reflecting hundreds of hours of work" and "DIRECTV used the information to prepare

and file a lawsuit." *Id.* at p. 5 ("On December 29, 2025, DIRECTV filed a declaratory judgment action against Adeia in the Northern District of California based on Adeia's confidential information and using Adeia's Confidential Information as support for the lawsuit."); *see also id.* at p. 11 ("To prepare its declaratory judgment action, DIRECTV used this Confidential Information.").

38. Though partially redacted, these statements by Adeia show that Adeia's detailed and extensive infringement analysis was provided to DIRECTV and, Adeia alleges, it provided the "blueprint" for a declaratory judgment action with respect to the ten Patents-in-Suit.

39. The implications of Adeia's statements in the SDNY Case have been recognized by other companies that provide television services and products. For instance, DISH Network L.L.C. ("DISH") filed a declaratory judgment action against Adeia in this Court. *See* Complaint, *DISH Network L.L.C. v. Adeia Inc.*, No. 26-cv-02811 (N.D. Cal. Apr. 1, 2026) (Dkt. 1). In its complaint, DISH states: "Adeia has also taken its own affirmative steps to validate that the Patents-In-Suit are amongst those that it would assert against companies that provide pay-television services and/or streaming products." *Id.* at ¶ 35; *see also id.* at ¶ 44 ("By Adeia's own admission, these ten patents are not cherry-picked at random, but are the specific assets selected after Adeia spent hundreds of hours and hundreds of pages identifying patents that would be most applicable to DIRECTV….").

### C. DIRECTV Products and Services

40. DIRECTV's products and services can be grouped into two categories: (1) DIRECTV Stream Products and Services, and (2) DIRECTV Multichannel Video Programming Distributor ("MVPD") Products and Services. On information and belief, Adeia will allege that the Patents-in-Suit cover various aspects of these technologies.

41. The DIRECTV Streaming Products and Services include hardware (e.g., servers) and software (e.g., the DIRECTV App), as well as certain functionalities, that provide DIRECTV's

streaming offerings.  Several of the Patents-in-Suit, taken at face value, may be alleged as directed to said hardware, software, and functionalities.  For example, the '010 Patent claims to cover a method of storing media content for video streams as fragments in multiple formats on a server—e.g., resolutions—and expires in May 2031.  *See* Ex. 7 ('010 Patent) at 1:17-32.  This patent purports to cover a key aspect of streaming technology (formatting control).  *See id.* at Abstract.  Additional examples include: (1) the '418 Patent, which claims to cover a method for streaming location-based content—e.g., local advertising—and expires in December 2031 (*see* Ex. 8 ('418 Patent) at 1:15-25); and (2) the '245 Patent, which claims to cover a method of displaying mid-stream content—e.g., advertisements—and expires in August 2028 (*see* Ex. 9 ('245 Patent) at Abstract).  Again, these technologies (location-based content control and displaying advertisements) are key aspects of offering a streaming service.  The two remaining streaming-based patents are the '961 Patent and the '334 Patent.  The '961 Patent claims to cover a method of displaying supplemental content—e.g. a picture-in-picture image—on a stream while the stream is subject to a playback operation—e.g., fast-forward—and expires in February 2034.  *See* Ex. 10 ('961 Patent) at 1:15-23.  The '334 Patent claims to cover a method of identifying where a user pauses a stream and subsequently providing an option to resume the stream at the pause point—e.g., the option to continue watching—and expires in June 2034.  *See* Ex. 11 ('334 Patent) at 1:21-32.  Taken together, these patents are directed to a significant portion of the key technologies in Adeia's streaming media portfolio.

42. 23. OnAs to the DIRECTV Stream Products and Services, on information and belief, Adeia will contend that in the absence of a license DIRECTV infringes: claim 1 of the '010 Patent via DIRECTV Stream server's storing content as different resolution fragments and providing said fragments to DIRECTV Stream users; claim 1 of the '418 Patent by providing location-based programs to DIRECTV Stream users; claim 1 of the '245 Patent by displaying mid-stream

advertisements to DIRECTV Stream users; claim 1 of the '961 Patent by displaying picture-in-picture content to DIRECTV Stream users; and claim 1 of the '334 Patent by providing the "Continue Watching" feature to DIRECTV Stream users ~~(collectively, "DIRECTV Stream Products and Services")~~.

43. The DIRECTV MVPD Products and Services include hardware (e.g., set-top box receiver systems, such as DIRECTV's Genie and Genie Mini) and software (e.g., DIRECTV's App) that relate to DIRECTV's provision of cable television to its consumers.  The '528 Patent claims to cover a system comprising a personal video recorder device and a personal video recorder compliant device—e.g., a primary set-top box and a smaller, secondary box coupled to it.  *See* Ex. 12 ('528 Patent) at Abstract.  The '526 Patent claims to cover a method of manipulating media guidance information from a portable electronic device—e.g., selecting content to be recorded on a set-top box via a mobile phone—and does not expire until July 2029 (*see* Ex. 13 ('526 Patent) at 1:62-2:31).  The '165 Patent claims to cover a method of displaying an interactive scoreboard of multiple sporting events while viewing a sporting event—e.g., a pop-up scoreboard of ongoing baseball games while viewing one game—and expires in June 2031 (*see* Ex. 14 ('165 Patent) at Abstract).   The '668 Patent claims to cover a method of providing both standard- and high-definition channels to users via a set-top-box and preventing display of the standard-definition if the client's device is capable of displaying the high-definition channel—i.e., only providing high-definition channels to a set-top box that is configured to do so—and expires in November 2029 (*see* Ex. 15 ('668 Patent) at Abstract).  The '922 Patent claims to cover a method of displaying a media asset matching viewer preferences during the broadcast of another media asset—e.g., playing an advertisement during a broadcast—and expires in June 2038 (*see* Ex. 16 ('922 Patent) at Abstract).   Because these patents purportedly relate to core features of cable broadcasting and have significant periods of enforceability remaining, the question of whether they

are valid and/or infringed is critical to whether the parties would enter into another license agreement, as well as the potential value of any such license.

44. 24. On As to the DIRECTV MVPD Products and Services, on information and belief, Adeia will contend that in the absence of a license DIRECTV infringes: claim 32 of the '528 Patent by providing users with a digital video recording (DVR) feature via DIRECTV's set-top box receiver systems, including DIRECTV's Genie and Genie Mini devices; claim 1 of the '526 Patent by displaying and allowing for modification of user's recorded programs via the DIRECTV App in connection with a DIRECTV set-top box receiver system, including DIRECTV's Genie device; claim 1 of the '165 Patent by providing an interactive scoreboard to users during a sports event via broadcast to a DIRECTV set-top box receiver system; claim 1 of the '668 Patent by providing standard-definition and high-definition content to users via broadcast to a DIRECTV set-top box receiver system; and claim 1 of the '922 Patent by identifying and broadcasting advertisements to users based on user data. These products and services are collectively referred to herein as the "DIRECTV MVPD Products and Services."

45. 25. The above-referenced DIRECTV Stream Products and Services and DIRECTV MVPD Products and Services offered to its customers are collectively referred to herein as the "DIRECTV Products and Services."

26. Despite discussions between the parties, no agreement has been reached to resolve their dispute. As noted above, Adeia has brought patent infringement actions against multiple companies for damages seeking to enforce its patent portfolio and has stated in its most recent public disclosures that it has a multi-million-dollar litigation budget of over $5 million per quarter.

46. 27. DIRECTV has reason to expect expects that if it does not agree to a license agreement with Adeia and continues selling its DIRECTV Products and Services, that it will be at risk of accruing possible damages for patent infringement with respect to Adeia's patents, including

particularly~~and~~ facing a suit by Adeia for infringing of the Patents-in-Suit.  This risk is shown by the entirety of the circumstances, including the extensive licensing history between the parties, Adeia's insistence that DIRECTV enter a new license agreement, the nature of Adeia's business model as a patent licensing entity, and the confirmatory statements made by Adeia in its public filings regarding DIRECTV and the relationship between its patent analysis and the Original Complaint's allegations regarding the Patents-in-Suit.

47. ~~28.~~ DIRECTV brings this action to resolve the dispute between the parties so that it does not have to proceed at risk of being found liable for patent infringement and accruing liability for damages with respect to the Patents-in-Suit.

48. ~~29.~~ Accordingly, an actual and justiciable controversy exists as to whether DIRECTV infringes any valid claim of the Patents-in-Suit.

### JURISDICTION AND VENUE

49. ~~30.~~ This action arises under the Patent Laws of the United States of America, 35 U.S.C. § 100 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338, based on the existence of an actual controversy between DIRECTV and Adeia for claims under the Patent Laws.  In particular, there is an active case or controversy about whether DIRECTV infringes any valid claims of each of the Patents-in-Suit.  *See e.g., supra* ¶¶ ~~15-29~~40-48.

50. DIRECTV has suffered at least two types of injuries based on Adeia's actions.  The first type of injury is specific to each of the Patents-in-Suit.  The second type is a portfolio-wide injury.  By this Amended Complaint, DIRECTV seeks to resolve the parties' disputes without waiting for Adeia to bring a patent infringement action on the Patents-in-Suit, which is a likely outcome given the parties' licensing history, Adeia's litigation history, and the confirmatory public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV.

51. As to the patent-specific injuries faced by DIRECTV, resolution of claims set forth in Counts I-X will fully resolve the dispute raised by Adeia with respect to each of the Patents-in-Suit.

52. As to the portfolio-wide injury faced by DIRECTV, resolution of the claims set forth in Counts I-X will redress DIRECTV's injury in at least three ways.

53. First, the MVPD-related patents were the primary basis for parties entering into a licensing arrangement.  However, these patents (i.e., the value driver of Adeia's portfolio) have largely expired.  Accordingly, the Court's adjudication of the selected, remaining MVPD-related patents (e.g., the '528 Patent, the '526 Patent, the '165 Patent, the '668 Patent, and the '922 Patent) is significant to the overall dispute, including the value of any license – or whether there is sufficient value remaining in the portfolio for the parties to seriously consider another license agreement. Adeia has demanded higher royalties for MVPD-related patents than for streaming patents (as reflected in higher royalties for Pay-TV subscribers than for streaming subscribers) such that whether these specific patents are infringed will by itself substantially change the total value of a license agreement for the Adeia Media Patent Portfolio.

54. Second, certain of the Patents-in-Suit are representative of core issues in dispute with respect to infringement, and thus, their adjudication will meaningfully impact the parties' positions moving forward.  This includes not only the scope, royalty period, and value of any potential license, but whether DIRECTV agrees to a license at all.  Of note, DIRECTV selected patents that have significant patent life remaining, including patents that do not expire until 2031 and 2034 with respect to streaming technology, and a patent relating to MVPD technology that does not expire until 2038.  Moreover, DIRECTV selected the Patents-in-Suit because they are directed to key technologies believed to be representative of Adeia's patents covering said key technologies. That is, the ten Patents-in-Suit were selected because they are amongst the most relevant to

DIRECTV's streaming and cable enterprise, while having the longest period of enforceability.  As such, adjudication of these patents will have a significant effect on the parties' overall rights and positions with respect to a potential license.

55. Third, Counts VIII-X seek a determination by this Court that the '165 Patent, the '668 Patent, and the '922 Patent are invalid under 35 U.S.C. § 101, as directed to patent-ineligible subject matter.  These particular patents were selected for adjudication on this issue because they are representative of a portfolio-wide validity concern.  Portfolios with older media patents – like the Adeia portfolio – often raise the question of subject matter eligibility under § 101, which is a key point of disagreement when parties are considering a license.  Many patents in the media environment have been held invalid under § 101, and the dispute between DIRECTV and Adeia raises this same issue.  Adjudication of the § 101 question for the '165 Patent, the '668 Patent, and the '922 Patent will alter the parties' rights, adjust proposed royalties, and advance resolution of the broader licensing dispute.

56. These patents claim features of cable broadcasting but admit that they are simply applying existing technology to certain use cases (*i.e.*, the claims are directed to patent-ineligible abstract ideas).  For example, the '165 Patent is directed to displaying an interactive scoreboard of multiple sporting events while viewing a sporting event—yet the '165 Patent admits that the underlying technology (e.g., program guides) was known at the time of the invention and the '165 Patent was merely applying this known technology to the limited use-case for sports broadcasting.  *See* Ex. 14 at 1:32-35; *see also id.* at 9:26-52.  The '668 Patent is directed to providing access to high-definition channels in a program guide when said channels are available.  Again, the '668 Patent acknowledges that all hardware (e.g., set-top boxes connected to display devices), software (e.g., television program guides), and the content itself (e.g., standard-definition and high-definition) were known at the time of the invention.  *See* Ex. 15 at 2:45-58; *see also id.* at

1:13-18. The '922 Patent is directed to broadcasting targeted content to users—the same idea of targeted advertising that traces back decades if not centuries. As with the other two Patents-in-Suit, the '922 Patent does not purport to invent any technology relating to the broadcasting or identification of the targeted content. *See* Ex. 16 at 1:48-54; *see also id.* at 12:37-58. These three patents thus represent a fundamental concern with Adeia's patent portfolio—that Adeia's patents claim patent-ineligible features of cable broadcasting.

57. The Patents-in-Suit offer the best vehicles to adjudicate the relevant questions of infringement and validity, and thus, the best basis to advance resolution of the broader dispute that arose from expiration of the license agreement.

58. Adeia's prior litigation history confirms the significance and representativeness of the Patents-in-Suit to Adeia's portfolio. Six of the ten Patents-in-Suit either directly or indirectly overlap with patents at issue in previous actions brought by Adeia's predecessor, Rovi Guides, Inc., and/or declaratory judgment actions and IPRs brought by media companies. That is, both Adeia itself and DIRECTV's competitors have identified many of the same patents as significant, and adjudicated their disputes in various fora.

59. For example, the '528 Patent was asserted by Rovi Guides against Comcast in district court and the ITC in 2019, with Comcast's Xfinity DVR system accused of infringement. *See* Complaint at 39-40, *Rovi Guides, Inc. v. Comcast Corp.*, No. 2-19-cv-03096 (C.D. Cal. Apr. 26, 2019) (Dkt. 1); *see also* Complaint, *Certain Digital Video Receivers, Broadband Gateways, and Related Hardware and Software Components*, Inv. No. 337-TA-1158 (USITC Apr. 26, 2019). Comcast subsequently filed three IPRs challenging the validity of the '528 Patent (which were all voluntarily dismissed following settlement). *See, e.g.*, Petition for *Inter Partes* Review, *Comcast Cable Commc'ns, LLC v. Rovi Guides, Inc.*, Nos. IPR2020-00809 (P.T.A.B. Apr. 22, 2020) (Paper 2); IPR2020-00810 (PTAB Apr. 22, 2020) (Paper 2); IPR2020-00811 (P.T.A.B. Apr. 22, 2020)

(Paper 2). Also, a continuation of the '668 Patent at issue here, U.S. Patent No. 9,578,363, was asserted by Rovi Guides against Comcast in district court and the ITC in 2018, with Comcast's Xfinity set-top box system accused of infringement. *See* First Amended Complaint at 57-58, *Rovi Guides, Inc. v. Comcast Corp.*, No. 18-cv-00253 (C.D. Cal. Feb. 8, 2018) (Dkt. 72); *see also* Complaint, *Digital Video Receivers and Related Hardware and Software Components*, Inv. No. 337-TA-1103 (USITC Feb. 8, 2018). Comcast also filed IPRs challenging the validity of U.S. Patent No. 9,578,363, and the PTAB determined the claims to be unpatentable. *See* Judgment, *Comcast Cable Commc'ns, LLC v. Rovi Techs. Corp.*, No. IPR2019-00284 (P.T.A.B. June 26, 2019) (Paper 19).

60. Two other patents asserted here, the '010 Patent and '526 Patent, were also challenged on grounds of non-infringement in Altice USA's declaratory judgment action against Adeia. *See* Complaint, *Altice USA, Inc. v. Adeia Inc.*, No. 25-cv-05390 (S.D.N.Y. June 27, 2025) (Dkt. 1). In its declaratory judgment complaint, Altice alleged that its streaming Optimum TV Over the Top ("OTT") multimedia content system product was accused of infringing the '010 Patent, and that its conduct relating to recording selections on its Optimum set-top boxes through its Optimum TV App was accused of infringing the '526 Patent. *See id.* at 8-9, 11. In the same action, Altice challenged additional patents that are related in claimed subject matter to, yet expire earlier than, the Patents-In-Suit. For example, Altice alleges it was accused of infringing U.S. Patent No. 8,165,598 (July 2030 expiration) through its provision of location-based content listing, which is similar to the content management subject matter of the '418 Patent asserted here (December 2031 expiration). *See id.* at 7-8. Similarly, Altice alleges it was accused of infringing U.S. Patent Nos. 8,589,324; 9,326,025; and 9,690,833 based on its Optimum TV App's search and recommendation functionalities, which are similar to the subject matter of the '334 Patent (June 2034 expiration).

*See id.* at 8-10.  However, these Altice action patents expire much sooner – in November 2026, March 2027, and May 2028, respectively.

61. Another former Adeia licensee, DISH Network (*see* Adeia 10-K at p. 7 (Ex. 1)), filed a declaratory judgment action, seeking non-infringement and invalidity of the same ten Patents-in-Suit.  Indicative of the expiring license, Adeia filed an action against DISH the day before (by mere hours), asserting infringement of five patents involving MVPD and streaming technology.  In DISH's declaratory judgement action, DISH similarly alleged that "DISH has reason to expect that if it does not agree to a license agreement with Adeia and continues selling its DISH Products and Services, that it is at imminent risk of being sued by Adeia for patent infringement." Complaint at ¶ 66, *Dish Network L.L.C. v. Adeia Inc.*, No. 26-cv-02811 (N.D. Cal. Apr. 1, 2026) (Dkt. 1).

62. Another Adeia licensee, X Corp. ("X"), filed a declaratory judgment action in November 2023 against Adeia asserting non-infringement of four patents relating to video streaming technology.  *See* Complaint, *X Corp. v. Adeia Inc.*, No. 23-cv-06151 (N.D. Cal. Nov. 28, 2023) (Dkt. 1).

63. During the pendency of this action, Adeia filed suit against DIRECTV in the United States District Court for the Central District of California alleging infringement of four patents directed to MVPD and streaming technology: U.S. Patent Nos. 8,327,013 ("the '013 patent"); 8,219,927 ("the '927 patent"); 8,023,884 ("the '884 patent"); and 12,593,081 ("the '081 patent").  The '013 Patent is directed to streaming segments of media—similar to the '010 Patent in the present action—and expires in December 2030—prior to the May 2031 expiration of the '010 Patent.  The '927 Patent is directed to an interactive program guide—similar to the '165 Patent in the present action—and expires in April 2030—prior to the June 2031 expiration of the '165 Patent.  The '884 Patent is directed to a replay feature during streaming—similar to the '334 Patent in the present action—and

expires in April 2030—prior to the June 2034 expiration of the '334 Patent. The '081 Patent is directed to storage of video segments—similar to the '010 Patent in the present action.

64. Moreover, Adeia has a well-established history and practice of suing companies that refuse to license its patent portfolio. For example, in November 2024, Adeia filed a patent infringement suit against The Walt Disney Company and its affiliates asserting infringement of six of its patents relating to media streaming and content delivery technology. *See* Complaint at ¶ 21, *Adeia Techs. Inc. v. The Walt Disney Co.*, No. 24-cv-01231 (D. Del. Nov. 7, 2024) (Dkt. 1). As another example, on November 3, 2025, Adeia filed a patent infringement suit against Advanced Micro Devices, Inc. asserting infringement of six patents. *See* Complaint, *Adeia Semiconductor Bonding Techs. Inc. v. Advanced Micro Devices, Inc.*, No. 25-cv-510 (W.D. Tex. Nov. 3, 2025) (Dkt. 1).

65. Adeia has brought patent infringement actions against multiple companies for damages seeking to enforce its patent portfolio and has stated in recent public disclosures that it has a multi-million-dollar litigation budget of over $5 million per quarter.

66. ~~31.~~ This Court has personal jurisdiction over Adeia because Adeia has engaged in actions in the Northern District of California that have established sufficient minimum contacts, specifically, Adeia's principal place of business is at 3025 Orchard Parkway, San Jose, California 95134.

67. ~~32.~~ The exercise of personal jurisdiction based on Adeia's contacts with this District does not offend traditional notions of fairness or substantial justice.

68. ~~33.~~ Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) as a substantial part of the events or omissions giving rise to the claims occurred in this District, and Adeia's principal place of business is in this District, which subjects Adeia to personal jurisdiction.

## ~~INTRADISTRICT~~DIVISIONAL ASSIGNMENT

69. ~~34.~~ Pursuant to Civil L.R. 3-2(c) and 3-5(b) ~~and General Order No. 44, this is an Intellectual Property Rights Action subject to assignment on a district-wide basis.~~, DIRECTV notes that this case has been assigned to the Honorable Jacqueline Scott Corley, and is proceeding in the United States District Court for the Northern District of California, San Francisco Division.

## THE PATENTS-IN-SUIT

### A. U.S. Patent No. 10,506,010

70. ~~35.~~ U.S. Patent No. 10,506,010 (the "'010 Patent") is titled "Delivering Content in Multiple Formats." A copy of the '010 Patent is attached hereto as Exhibit ~~1~~7. The '010 Patent on its face indicates that it was originally assigned to Comcast Cable Communications LLC, and that the inventors are Danial E. Holden and Austin J. Vrbas. On information and belief, Comcast Cable Communications, LLC assigned the '010 Patent to Adeia Media Holdings LLC on November 24, 2020, in conjunction with a license agreement between those parties entered in 2020.

71. ~~36.~~ The application that issued as the '010 Patent was filed on February 1, 2017, and it was issued on December 10, 2019.

72. ~~37.~~ DIRECTV disputes that it infringes any valid claims of the '010 Patent.

### B. U.S. Patent No. 8,805,418

73. ~~38.~~ U.S. Patent No. 8,805,418 (the "'418 Patent") is titled "Methods and Systems for Performing Actions Based on Location-Based Rules." A copy of the '418 Patent is attached hereto as Exhibit ~~2~~8. The '418 Patent on its face indicates that it was originally assigned to United Video Properties, Inc., and that the inventor is Michael R. Nichols. Adeia Guides Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

74. ~~39.~~ The application that issued as the '418 Patent was filed on December 23, 2011, and it was issued on August 12, 2014.

75. 40. DIRECTV disputes that it infringes any valid claims of the '418 Patent.

**C.  U.S. Patent No. 11,778,245**

76.    41. U.S. Patent No. 11,778,245 (the "'245 Patent") is titled "Interrupting Presentation of Content Data to Present Additional Content in Response to Reaching a Timepoint Relating to the Content Data and Notifying a Server Over the Internet."  A copy of the '245 Patent is attached hereto as Exhibit 39.  The '245 Patent on its face indicates that it was originally assigned to TiVo Solutions Inc., and that the inventor is James M. Barton.  Adeia Media Solutions Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

77. 42. The application that issued as the '245 Patent was filed on August 13, 2018, and it was issued on October 3, 2023.

78. 43. DIRECTV disputes that it infringes any valid claims of the '245 Patent.

**D.  U.S. Patent No. 10,110,961**

79. 44. U.S. Patent No. 10,110,961 (the "'961 Patent") is titled "Methods and Systems for Supplementing Media Assets During Fast-Access Playback Operations."  A copy of the '961 Patent is attached hereto as Exhibit 410.  The '961 Patent on its face indicates that it was originally assigned to Rovi Guides, Inc., and that the inventor is Paul T. Stathacopoulos.  Adeia Guides Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

80. 45. The application that issued as the '961 Patent was filed on January 25, 2017, and it was issued on October 23, 2018.

81. 46. DIRECTV disputes that it infringes any valid claims of the '961 Patent.

**E.  U.S. Patent No. 9,715,334**

82. 47. U.S. Patent No. 9,715,334 (the "'334 Patent") is titled "Personalized Timeline Presentation."  A copy of the '334 Patent is attached hereto as Exhibit 511.  The '334 Patent on its face indicates that it was originally assigned to MobiTV, Inc., and that the inventors are Kay

Johansson and Cedric Fernandes.  On information and belief, Adeia Media Holdings LLC is the current assignee of the '334 Patent.

83. 48. The application that issued as the '334 Patent was filed on June 16, 2014, and it was issued on July 25, 2017.

84. 49. DIRECTV disputes that it infringes any valid claims of the '334 Patent.

### F.  U.S. Patent No. 8,156,528

85. 50. U.S. Patent No. 8,156,528 (the "'528 Patent") is titled "Personal Video Recorder Systems and Methods."  A copy of the '528 Patent is attached hereto as Exhibit 612.  The '528 Patent on its face indicates that it was originally assigned to United Video Properties, Inc., and that the inventors are Joseph P. Baumgartner, Kenneth F. Carpenter, Jr., Michael D. Ellis, and Danny R. Gaydou.  Adeia Guides Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

86. 51. The application that issued as the '528 Patent was filed on March 21, 2002, and it was issued on April 10, 2012.

87. 52. DIRECTV disputes that it infringes any valid claims of the '528 Patent.

### G.  U.S. Patent No. 8,601,526

88. 53. U.S. Patent No. 8,601,526 (the "'526 Patent") is titled "Systems and Methods for Displaying Media Content and Media Guidance Information."  A copy of the '526 Patent is attached hereto as Exhibit 713.  The '526 Patent on its face indicates that it was originally assigned to United Video Properties, Inc., and that the inventors are Akitaka Nishimura and Akio Yoshimoto. Adeia Guides Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

89. 54. The application that issued as the '526 Patent was filed on June 23, 2008, and it was issued on December 3, 2013.

90. 55. DIRECTV disputes that it infringes any valid claims of the '526 Patent.

**H.  U.S. Patent No. 8,640,165**

91. 56. U.S. Patent No. 8,640,165 (the "'165 Patent") is titled "Systems and ~~methods for providing enhanced sports watching media guidance~~Methods for Providing Enhanced Sports Watching Media Guidance."  A copy of the '165 Patent is attached hereto as Exhibit ~~8~~14.  The '165 Patent on its face indicates that it was originally assigned to Rovi Guides, Inc. and that the inventors are Michael D. Ellis and Jon P. Radloff.  Adeia Guides, Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

92. 57. The application that issued as the '165 Patent was filed on July 31, 2007, and it was issued on January 28, 2014.

93. 58. DIRECTV disputes that it infringes any valid claims of the '165 Patent.

**I.  U.S. Patent No. 8,234,668**

94. 59. U.S. Patent No. 8,234,668 (the "'668 Patent") is titled "Content ~~access~~Access."  A copy of the '668 Patent is attached hereto as Exhibit ~~9~~15.  The '668 Patent on its face indicates that it was originally assigned to Microsoft Corporation and that the inventors are Peter J. Potrebic, Prashant K. Jha, and Mark B. Tozer.  Adeia Technologies, Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

95. 60. The application that issued as the '668 Patent was filed on December 23, 2008, and it was issued on July 31, 2012.

96. 61. DIRECTV disputes that it infringes any valid claims of the '668 Patent.

**J.  U.S. Patent No. 12,301,922**

97. 62. U.S. Patent No 12,301,922 (the "'922 Patent") is titled "Systems and ~~methods for providing synchronized supplemental content to a subset of users that are disinterested in live content~~Methods for Providing Synchronized Supplemental Content to a Subset of Users that are

Disinterested in Live Content." A copy of the '922 Patent is attached hereto as Exhibit ~~10~~16. The '922 Patent on its face indicates that it was originally assigned to Adeia Guides~~,~~ Inc. and that the inventors are Dylan Matthew Wondra, Jean Michelle Somlo, Michaela Schlocker Logan, Mario Miguel Sanchez, and William L. Thomas. Adeia Guides, Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

98. ~~63.~~ The application that issued as the '922 Patent was filed on January 10, 2024, and it was issued on May 13, 2025.

99. ~~64.~~ DIRECTV disputes that it infringes any valid claims of the '922 Patent.

**COUNT I**

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '010 PATENT**

100.    ~~65.~~ DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

101.    ~~66.~~ As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '010 Patent. In particular, on information and belief, Adeia will contend that DIRECTV Stream Products and Services infringe at least claim 1 of the '010 Patent.

102.    ~~67.~~ As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including the '010 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '010 Patent.

103.    ~~68.~~ DIRECTV Stream Products and Services do not infringe and have not infringed, directly or indirectly, any claim of the '010 Patent, either literally or under the doctrine of equivalents.

104.    69. Specifically, claim 1 requires that the computing device "align[s]... . . . based on a point in the content item that corresponds to a beginning of the first fragment and a beginning of the second fragment, the first fragment with the second fragment." Ex. 7, 13:19-22. DIRECTV does not infringe claim 1 of the '010 Patent at least because the alleged computing device does not perform aligning as required by claim 1.

105.    70. Because DIRECTV has not infringed claim 1 or any other claim of the '010 Patent, DIRECTV has not required a license to the '010 Patent in order to provide the DIRECTV Products and Services to its customers.

106.    71. Because DIRECTV does not infringe, directly or indirectly, claim 1 or any other claim of the '010 Patent, DIRECTV iswas not required to renew its license with Adeia when it expiresexpired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

107.    72. DIRECTV is entitled to a judgment declaring that the DIRECTV Products and Services, including DIRECTV's Stream Products and Services, the '010 Patent do not and will not infringe any valid claim of the '010 Patent.

## COUNT II

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '418 PATENT

108.    73. DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

109.    74. As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '418 Patent. In particular, on information and belief, Adeia will contend that DIRECTV Stream Products and Services infringe at least claim 1.

110.    75. As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties'

licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including, the '418 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '418 Patent.

111. 76. The DIRECTV Products and Services, including DIRECTV Stream Products and Services, do not infringe and have not infringed, directly or indirectly, any claim of the '418 Patent, either literally or under the doctrine of equivalents.

112. 77. Specifically, claim 1 requires "determining that the user entered a predetermined range of a location," and "selecting one of a plurality of actions based on the location and the location-based rule." Ex. 8, 23:14-19. DIRECTV does not infringe claim 1 of the '418 Patent at least because the DIRECTV Products and Services do not "select[] one of a plurality of actions based on the location and the location-based rule" as required by the claim.

113. 78. Because DIRECTV has not infringed claim 1 or any other claim of the '418 Patent, DIRECTV has not required a license to the '418 Patent in order to provide the DIRECTV Products and Services to its customers.

114. 79. Because DIRECTV does not infringe claim 1 or any other claim of the '418 Patent, DIRECTV iswas not required to renew its license with Adeia when it expiresexpired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

115. 80. DIRECTV is entitled to a judgment declaring that DIRECTV Products and Services, including DIRECTV Stream Products and Services. do not and will not infringe any valid claim of the '418 Patent.

## COUNT III

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '245 PATENT

116. 81. DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

117. 82. As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '245 Patent.  In particular, on information and belief, Adeia will contend that DIRECTV Stream Products and Services infringe at least claim 1.

118. 83. As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including, the '245 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '245 Patent.

119. 84. The DIRECTV Products and Services, including DIRECTV Stream Products and Services, do not infringe and have not infringed, directly or indirectly, any claim of the '245 Patent, either literally or under the doctrine of equivalents.

120. 85. Specifically, claim 1 requires "a set of timepoints relating to the content data [received at the client device] prior to generating for display . . . any portion of the content data." Ex. 9, 20:25-28.  The DIRECTV Products and Services, including DIRECTV Stream Products and Services, do not infringe claim 1 of the '245 Patent at least because the "set of timepoints" do not "relat[e] to the content data" as required by the claim.

121. 86. Because DIRECTV has not infringed claim 1 or any other claim of the '245 Patent, DIRECTV has not required a license to the '245 Patent in order to provide the DIRECTV Products and Services to its customers.

122. 87. Because DIRECTV does not infringe claim 1 or any other claim of the '245 Patent, DIRECTV iswas not required to renew its license with Adeia when it expiresexpired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

123. 88. DIRECTV is entitled to a judgment declaring that the DIRECTV Products and Services, including DIRECTV Stream Products and Services do not and will not infringe any valid claim of the '245 Patent.

**COUNT IV**

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '961 PATENT**

124. 89. DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

125. 90. As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '961 Patent. In particular, on information and belief, Adeia will contend that DIRECTV Stream Products and Services infringe at least claim 1.

126. 91. As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including, the '961 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '961 Patent.

127. 92. The DIRECTV Products and Services, including DIRECTV Stream Products and Services, do not infringe and have not infringed, directly or indirectly, any claim of the '961 Patent, either literally or under the doctrine of equivalents.

128. 93. Specifically, claim 1 requires that "a user input" is received "while a media asset is subject to a fast-access playback operation," and that a progression point indicated by the user's input is "compar[ed]... . . . to a plurality of progression points stored in a database." Ex. 10, 29:55-62. The DIRECTV Products and Services, including DIRECTV Stream Products and Services do not infringe claim 1 of the '961 Patent at least because "a user input" is not received "while a media asset is subject to a fast-access playback operation" as required by the claim.

129. 94. Because DIRECTV has not infringed claim 1 or any other claim of the '961 Patent, DIRECTV has not required a license to the '961 Patent in order to provide the DIRECTV Products and Services to its customers.

130. 95. Because DIRECTV does not infringe claim 1 or any other claim of the '961 Patent, DIRECTV iswas not required to renew its license with Adeia when it expiresexpired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

131. 96. DIRECTV is entitled to a judgment declaring that the DIRECTV Products and Services, including DIRECTV Stream Products and Services. do not and will not infringe any valid claim of the '961 Patent.

**COUNT V**

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '334 PATENT**

132. 97. DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

133. 98. As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '334 Patent. In particular, on information and belief, Adeia will contend that DIRECTV Stream Products and Services infringe at least claim 1.

134. 99. As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including, the '334 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '334 Patent.

135. 100. The DIRECTV activities that Adeia has DIRECTV of infringement, including DIRECTV Products and Services, including DIRECTV Stream Products and Services, do not

infringe and have not infringed, directly or indirectly, any claim of the '334 Patent, either literally or under the doctrine of equivalents.

136. 101. Specifically, claim 1 requires that "an instruction [is transmitted] to a client device to initiate playback of the video content item in accordance with the designated pause event at the client device." Ex. 11, 10:52-54. The DIRECTV Products and Services, including DIRECTV Stream Products and Services do not infringe claim 1 of the '334 Patent at least because there is no "instruction to a client device to initiate playback of the video content item in accordance with the designated pause event at the client device" as required by the claim.

137. 102. Because DIRECTV has not infringed claim 1 or any other claim of the '334 Patent, DIRECTV has not required a license to the '334 Patent in order to provide the DIRECTV Products and Services to its customers.

138. 103. Because DIRECTV does not infringe claim 1 or any other claim of the '334 Patent, DIRECTV iswas not required to renew its license with Adeia when it expiresexpired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

139. 104. DIRECTV is entitled to a judgment declaring that the DIRECTV Products and Services do not and will not infringe any valid claim of the '334 Patent.

## COUNT VI

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '528 PATENT

140. 105. DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

141. 106. As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '528 Patent. In particular, on information and belief, Adeia will contend that DIRECTV MVPD Products and Services infringe at least claim 32.

142.  107. As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including, the '528 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '528 Patent.

143.  108. The DIRECTV Products and Services do not infringe and have not infringed, directly or indirectly, any claim of the '528 Patent, either literally or under the doctrine of equivalents.

144.  109. Specifically, claim 32 requires a "personal video recorder device comprising . . . . . . software and hardware configured to implement a *first interactive television program guide*," a coupled "personal video recorder compliant device with software and hardware configured to implement a *second interactive television program guide*," and that the "first interactive television program guide and the second interactive television program guide . . . . . . are distinctly implemented"—i.e., not the same interactive program guide. Ex. 12, 27:37 – 28:12 (emphasis added). DIRECTV does not infringe claim 32 of the '528 Patent at least because the DIRECTV Products and Services are not "configured to implement a first interactive television program guide" and a "second interactive television program guide" as required by the claim.

145.  110. Because DIRECTV has not infringed claim 32 or any other claim of the '528 Patent, DIRECTV has not required a license to the '528 Patent in order to provide the DIRECTV Products and Services to its customers.

146.  111. Because DIRECTV does not infringe claim 32 or any other claim of the '528 Patent, DIRECTV iswas not required to renew its license with Adeia when it expiresexpired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

147.    112. DIRECTV is entitled to a judgment declaring that the DIRECTV Products and Services do not and will not infringe any valid claim of the '528 Patent.

## COUNT VII

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '526 PATENT

148.    113. DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

149.    114. As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '526 Patent.  In particular, on information and belief, Adeia will contend that DIRECTV MVPD Products and Services infringe at least claim 1.

150.    115. As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including, the '526 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '526 Patent.

151.    116. The DIRECTV Products and Services do not infringe and have not infringed, directly or indirectly, any claim of the '526 Patent, either literally or under the doctrine of equivalents.

152.    117. Specifically, claim 1 requires that the "media guidance information received by the control circuitry from the first portable electronic device is simultaneously displayed... . . . with media content or media guidance information received by the control circuitry from a source other than the first portable electronic device," and that "the first portable electronic device [receives an indication] that the media guidance information displayed on the display coupled to the control circuitry has been manipulated." Ex. 13, 21:3-13.  DIRECTV does not infringe claim 1 of the '526 Patent because "the media guidance information received from the first portable

electronic device" is not "simultaneously displayed" by DIRECTV Products and Service as required by the claim.

153. 118. Because DIRECTV has not infringed claim 1 or any other claim of the '526 Patent, DIRECTV has not required a license to the '526 Patent in order to provide the DIRECTV Products and Services to its customers.

154. 119. Because DIRECTV does not infringe claim 1 or any other claim of the '526 Patent, DIRECTV iswas not required to renew its license with Adeia when it expiresexpired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

155. 120. DIRECTV is entitled to a judgment declaring that DIRECTV Products and Services do not and will not infringe any valid claim of the '526 Patent.

**COUNT VIII**

**<u>DECLARATORY JUDGMENT OF INVALIDITY OF '165 PATENT</u>**

156. 121. DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

157. 122. As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '165 Patent.  In particular, on information and belief, Adeia will contend that DIRECTV MVPD Products and Services infringe at least claim 1.

158. 123. As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including, the '165 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '165 Patent.

159.    124. At least claim 1 of the '165 Patent is invalid under 35 U.S.C. § 101 as directed to patent-ineligible subject matter.  Specifically, claim 1 of the '165 Patent is directed to the abstract idea of displaying an interactive scoreboard during a sporting event.

160.    125. Claim 1 of the '165 Patent does not recite an inventive concept.  Rather, it is directed to routine and conventional activities, implemented on commonplace devices.  For example, the '165 Patent describes implementing the abstract idea of an interactive scoreboard as an application (i.e., software) displayed on a TV for providing sports information ("An interactive 'sports watcher' application may execute at least partially on a local user equipment device to support the enhanced access and viewing functionality.").  *See* Ex. 8 14 at 2:21-24.  The '165 Patent admits, however, that interactive media applications were known (e.g., in the form of program guides), could access various types of data, and support various types of "advanced" features ( "generalized applications that support basic media guidance functionality for a wide array of media content of a variety of different genres and subgenres").  *See id.* at 1:32-35.  At most, the '165 Patent suggests that its innovation was using this type of known application and data access in the field of sports ("These applications, however, typically fail to provide a custom set of features and functionality for specific types of media content, such as sporting events and other sports-related content.").  *See id.* at 1:35-38.  And there is no new hardware here – the patent admits that all of this can be accomplished with existing processors and/or graphics circuitry.  *See, e.g., id.* at 9:26-52.  There were no technical hurdles, for instance, in providing simultaneous displays or responding to user inputs ("As is currently understood in the art, the output from more than one tuner may be decoded and displayed simultaneously on a single display screen if desired.  For example, picture-in-picture (PIP) or picture-on-picture (POP) modes may be implemented to allow for multiple video windows to be displayed simultaneously.").  *Id.* at 9:35-41.  Thus, claim 1

of the '165 Patent does nothing more than recite the abstract idea of displaying interactive scores during a sporting event using existing, generic hardware and software.

161. ~~126.~~ Because DIRECTV has not infringed any valid claim of the '165 Patent, DIRECTV has not required a license to the '165 Patent in order to provide the DIRECTV Products and Services to its customers.

162. ~~127.~~ Because DIRECTV does not infringe any valid claim of the '165 Patent, DIRECTV, DIRECTV ~~is~~was not required to renew its license with Adeia when it ~~expires~~expired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

163. ~~128.~~ DIRECTV is entitled to a judgment declaring that the DIRECTV Products and Services do not and will not infringe any valid claim of the '165 Patent.

## COUNT IX

### DECLARATORY JUDGMENT OF INVALIDITY OF '668 PATENT

164. ~~129.~~ DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

165. ~~130.~~ As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '668 Patent.  In particular, on information and belief, Adeia will contend that DIRECTV MVPD Products and Services infringe at least claim 1.

166. ~~131.~~ As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including, the '668 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '668 Patent.

167.    132.  At least claim 1 of the '668 Patent is invalid under 35 U.S.C. § 101 as patent-ineligible subject matter.  Specifically, claim 1 of the '668 Patent is directed to the abstract idea of providing access to high-definition channels in a program guide when available (e.g., instead of providing the corresponding standard-definition channels).  Put another way, the '668 Patent is directed to non-duplicative access of content.  This abstract idea—providing a higher-quality product in place of a lower-quality product when said higher-quality product is available—is a traditional notion of market behavior that has existed long before the advent of television or high-definition channels.

168.    133.  Claim 1 of the '668 Patent does not recite an inventive concept.  Rather, it is directed to routine and conventional activities, implemented on commonplace devices.  For example, the '668 Patent describes implementing the abstract idea of non-duplicative access of content, e.g., standard-definition and high-definition channels in a program guide ("[I]nclusion of both channels in an EPG may be duplicative. Consequently, in this implementation access to channels having matching content is granted or restricted based on the capabilities of the client (e.g., capability to output content in high definition).").  Ex. 915 at 3:13-17.  The '668 Patent admits, however, that use of program guides to access content was well-known and commonplace by 2008, the filing year of the '668 Patent ("For example, a traditional approach employed by a client having PVR functionality was based on an implicit directive that users were to browse through the EPG to find interesting programs that the users wanted to record on their own.").  *See id.* at 2:45-58.  Indeed, the '668 Patent describes that, at the time of the invention, there was nothing new about providing content to users in various ways (e.g., "standard definition versus high definition").  *Id.* at 1:13-1813-17.  Moreover, there was not a particular, technical problem addressed by the '668 Patent ("The client 104 may be configured in a variety of ways. For example, the client 104 may be configured as a computer that is capable of communicating over

the network connection 108, such as a desktop computer, a mobile station, an entertainment appliance, a set-top box communicatively coupled to a display device as illustrated, a wireless phone, and so forth."). *Id.* at 4:4-10. Thus, claim 1 of the '668 Patent does nothing more than recite the abstract idea of product substitution based on availability of a higher-quality product as implemented on generic, off-the-shelf hardware.

169. ~~134.~~ Because DIRECTV has not infringed any valid claim of the '668 Patent, DIRECTV has not required a license to the '668 Patent in order to continue ~~provide~~providing the DIRECTV Products and Services to its customers.

170. ~~135.~~ Because DIRECTV does not infringe any valid claim of the '668 Patent, DIRECTV, DIRECTV ~~is~~was not required to renew its license with Adeia when it ~~expires~~expired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

171. ~~136.~~ DIRECTV is entitled to a judgment declaring that the DIRECTV Products and Services do not and will not infringe any valid claim of the '668 Patent.

**COUNT X**

**DECLARATORY JUDGMENT OF INVALIDITY OF '922 PATENT**

172. ~~137.~~ DIRECTV realleges and incorporates by reference each paragraph above, as if fully set forth herein.

173. ~~138.~~ As set forth above, on information and belief, Adeia will contend that DIRECTV infringes at least one claim of the '922 Patent. In particular, on information and belief, Adeia will contend that DIRECTV MVPD Products and Services infringe at least claim 1.

174. ~~139.~~ As a result of Adeia's litigation history, the public statements by Adeia regarding its infringement analysis and communication of such analysis to DIRECTV, the parties' licensing history, and Adeia's demands that DIRECTV license the Adeia portfolio, including the

'922 Patent, an actual and judiciable controversy exists between Adeia and DIRECTV regarding the infringement of the '922 Patent.

175.    140. At least claim 1 of the'922 Patent is invalid under 35 U.S.C. § 101 as patent-ineligible subject matter.  Specifically, the claims of the '922 Patent are directed to the abstract idea of identifying a subset of users and outputting targeted content to said subset of users. This abstract idea is not unique to broadcast television—rather it has consistently been integrated in consumer markets.  For example, targeted advertising traces back to the earliest days of print media, where certain demographics received different advertisements based on expected engagement with said advertisements.

176.    141. Claim 1 of the '992 Patent does not recite an inventive concept.  Rather, it is directed to routine and conventional activities, implemented on commonplace devices.  For example, the '992 Patent describes implementing the abstract idea of identifying a subset of users and outputting targeted content to said subset of users ("a media guidance application that replaces a segment of live content from an over-the-top (OTT) provider with a segment of non-live content from the OTT provider for a subset of users that isare both disinterested in the segment of live content and also part of a same synchronized viewing group.").  Ex. 1016 at. 1:63-2:2.  The '992 Patent admits, however, that, at the time of the invention, it was known for computers to interpret preferences ("content providers can transmit and receive metadata associated with media and/or profiles associated with users and determine when a user is interested or disinterested in content") and provide supplemental content to a single user using existing equipment ("[t]he advancement of digital transmission of media content has increased the amount of data that can be transmitted between content providers and user equipment").) Id. at. 1:48-54.  Put differently, by the filing of the '922 Patent in 2024, content providers could identify targeted content based on user metadata and provide said content to a single user ("[computer systems] simply provide

supplemental content to a single user based on that single user's interests"). *Id.* at 1:58-62. Further, claim 1 does not implicate any technical requirements or address a particular technical problem ("With the advent of the Internet, mobile computing, and high-speed wireless networks, users are accessing media on user equipment devices on which they traditionally did not"). *Id.* at 12:~~37-40~~37-39; *see also id.* at 12:40-58 (listing generic devices such as "a television, a Smart TV, a set-top box~~...~~ . . . or *any* other television equipment, computing equipment, or wireless device" as capable of accessing the content described in the claims). Thus, claim 1 of the '922 Patent does nothing more than recite the abstract idea of identifying a subset of users and outputting targeted content to said subset of users using known techniques and displaying said targeted content on existing devices.

177.    ~~142.~~ Because DIRECTV has not infringed any valid claim of the '922 Patent, DIRECTV has not required a license to the '922 Patent in order to provide the DIRECTV Products and Services to its customers.

178.    ~~143.~~ Because DIRECTV does not infringe any valid claim of the '922 Patent, DIRECTV, DIRECTV ~~is~~was not required to renew its license with Adeia when it ~~expires~~expired on December 31, 2025, to continue providing the DIRECTV Products and Services to its customers.

179.    ~~144.~~ DIRECTV is entitled to a judgment declaring that the DIRECTV Products and Services do not and will not infringe any valid claim of the '922 Patent.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38, DIRECTV hereby respectfully demands a trial by jury of all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, DIRECTV prays for judgment as follows:

A. A declaration that the claims of the '165 Patent, '668 Patent, and '922 Patent are invalid;

B. A declaration that DIRECTV does not and has not infringed any claims of the Patents-in-Suit, either literally or under the Doctrine of Equivalents;

C. A declaration that DIRECTV does not induce infringement of the Patents-in-Suit;

D. A declaration that DIRECTV does not contributorily infringe on the Patents-in-Suit;

E. A declaration that judgment be entered in favor of DIRECTV and against Adeia on DIRECTV's claims;

F. An order declaring this case as exceptional within the meaning of 35 U.S.C. § 285, and awarding to DIRECTV its reasonable attorneys' fees; and

G. Awarding to DIRECTV such further relief as this Court may deem necessary, just, and/or proper.


Dated: ~~December 29~~July 21, ~~2025~~2026        By:    *Ryan K. Yagura*

Ryan K. Yagura (CA S.B. #197619)
Xin-Yi Zhou (CA S.B. #251969)
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Sharon L. Davis ~~(pro hac forthcoming)~~
Michael H. Jones ~~(pro hac forthcoming)~~
Bryan B. Thompson ~~(pro hac forthcoming)~~
Benjamin Fishman ~~(pro hac forthcoming)~~
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031


*Attorneys for Plaintiff DIRECTV, LLC*

| Summary report: Litera Compare for Word 11.12.0.83 Document comparison done on 7/21/2026 4:06:31 PM | |
|---|---|
| **Style name:** OMM Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** FINAL 2025-12-29 DJ Complaint - DIRECTV.docx | |
| **Modified DMS:** nd://4938-3653-8815/1/2026-07-21 Amended DJ Complaint - DIRECTV v Adeia ND Cal.docx | |
| **Changes:** | |
| Add | 331 |
| Delete | 238 |
| Move From | 8 |
| Move To | 8 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 585 |