M. Elizabeth Day (SBN 177125)
Marc Belloli (SBN 244290)
Robin Curtis (SBN 271702)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 464-8501
Facsimile: (415) 426-4744
eday@bdiplaw.com
mbelloli@bdiplaw.com
rcurtis@bdiplaw.com

*Attorneys for Defendants*

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DIRECTV, LLC,

　　　　　Plaintiff,

v.

ADEIA, INC., ADEIA GUIDES INC.,
ADEIA MEDIA HOLDINGS LLC,
ADEIA TECHNOLOGIES INC.,
AND ADEIA MEDIA SOLUTIONS
INC.,

　　　　　Defendants.

Case No. 3:25-cv-11048-JSC

**NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1)**

Hon. Jacqueline S. Corley
Courtroom 8

Date: October 1, 2026
Time: 10:00 a.m.

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
CASE NO. 3:25-CV-11048-JSC**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **October 1, 2026,** at 10:00 a.m., or as soon as the matter may be heard, before the Honorable Jacqueline Scott Corley in Courtroom 8, 450 Golden Gate Avenue, San Francisco, California, Defendants Adeia, Inc., Adeia Guides Inc., Adeia Media Holdings LLC, Adeia Technologies Inc., and Adeia Media Solutions Inc. (collectively, "Adeia" or "Defendants") will and hereby do move to dismiss this action for lack of subject matter jurisdiction.

This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). As set forth more fully in the Memorandum of Points and Authorities below, DIRECTV, LLC's ("DIRECTV") First Amended Complaint fails to allege any redressable injury-in-fact and therefore does not establish Article III standing to seek declaratory judgments of non-infringement or invalidity for the patents it has placed at issue. Because the First Amended Complaint identifies no concrete controversy sufficient to support subject-matter jurisdiction, this action must be and should be dismissed.

This motion is based upon this notice of motion and the accompanying memorandum of points and authorities, the papers and records on file in this matter, including DIRECTV's First Amended Complaint, matters the Court may judicially notice, and such other matters as may properly come before the Court.

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND .................................................................................................... 2

III. LEGAL STANDARD .......................................................................................... 3

IV. ARGUMENT ....................................................................................................... 5

   A. The FAC Does Not Establish an Injury-in-Fact ............................................... 5

      1. NDA communications cannot support an injury-in-fact ............................ 6

      2. The FAC fails to allege any specific actions or threats regarding the Patents-in-Suit or any DIRECTV product or service. (Factors 1, 2, and 10) ........................................................................ 7

      3. Adeia's litigation history does not supply the missing affirmative act. (Factors 4 and 5) ....................................................................... 8

      4. The remaining *Cepheid* factors reinforce the existence of a portfolio dispute, not ten patent-specific controversies. (Factors 3, 6, 7, 8, 9, 11, 12, and 13) ........................................................ 10

      5. Generalized portfolio licensing pressure cannot establish injury-in-fact ...................................................................................... 12

   B. DIRECTV's Complaint Lacks Redressability ................................................. 13

      1. The amended allegations taken as true do not relieve the alleged harm ........................................................................................ 14

      2. The allegations do not plausibly plead representativeness. ..................... 15

      3. The case law confirms that DIRECTV has not alleged redressability. ..................................................................................... 18

   C. The Court Should Decline to Exercise Declaratory Judgment Jurisdiction ........................................................................................... 20

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
CASE NO. 3:25-CV-11048-JSC**

1.    DIRECTV filed this action to obtain leverage in the parties' broader portfolio negotiations. ................................................................. 20

V.    CONCLUSION ........................................................................................ 22

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

# TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Avery Dennison Corp.*
  673 F.3d 1372 (Fed. Cir. 2012) ...................................................................4, 5, 6, 12

*AbbVie Inc. v. MedImmune Ltd.*
  881 F.3d 1334 (Fed. Cir. 2018) ...................................................................19

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*
  24 F.3d 178 (Fed. Cir. 1994) ......................................................................13

*Apple Inc. v. Qualcomm Inc.*
  992 F.3d 1378 (Fed. Cir. 2021) ...................................................................19

*Apple Inc. v. VoIP-Pal.com, Inc.*
  506 F. Supp. 3d 947 (N.D. Cal. 2020)..........................................................5

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009).....................................................................................17

*Bennett v. Spear*
  520 U.S. 154 (1997)......................................................................................3

*Cepheid v. Roche Molecular Sys., Inc.*
  No. 3:12-cv-04411-EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013).....5, 7, 8, 10,
  11, 12

*Chandler v. State Farm Mut. Auto. Ins. Co.*
  598 F.3d 1115 (9th Cir. 2010) .....................................................................3

*Current Lighting Sols., LLC v. Signify Holding B.V.*
  No. 1:23-cv-11398-GAO, 2024 WL 456923 (D. Mass. Feb. 6, 2024) ....................21

*Dolby Labs., Inc. v. Intertrust Techs. Corp.*
  No. 3:19-cv-03371, 2019 WL 5788574 (N.D. Cal. Nov. 6, 2019) ...........................6

*EMC Corp. v. Norand Corp.*
  89 F.3d 807 (Fed. Cir. 1996) .......................................................................21

*In re Qualcomm Litig.*
No. 3:17-cv-00108-GPC-MDD, 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) .... 7, 8, 12, 18, 19

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*
599 F.3d 1377 (Fed. Cir. 2010) ..................................................................... 9, 10, 20

*Intel Corp. v. Tela Innovations, Inc.*
No. 3:18-cv-02848, 2018 WL 4859314 (N.D. Cal. Oct. 5, 2018) ........................... 6

*Maya v. Centex Corp.*
658 F.3d 1060 (9th Cir. 2011) ................................................................................. 3

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007).................................................................................... 4, 21

*Prasco, LLC v. Medicis Pharm. Corp.*
537 F.3d 1329 (Fed. Cir. 2008) ..................................................................... 12, 13

*Red Hat, Inc. v. VirtaMove, Corp.*
785 F. Supp. 3d 603 (N.D. Cal. 2025)................................................................. 9, 10

*Samsung Elecs. Corp., Ltd. v. Oura Health Oy*
No. 3:24-cv-03245-AMO, 2025 WL 929410 (N.D. Cal. Mar. 27, 2025)........... 9, 10

*SanDisk Corp. v. STMicroelectronics, Inc.*
480 F.3d 1372 (Fed. Cir. 2007) ................................................................. 6, 12, 13

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
454 U.S. 464 (1982).................................................................................................. 3

*Warren v. Fox Family Worldwide, Inc.*
328 F.3d 1136 (9th Cir. 2003) .............................................................................. 3, 5

*X Corp. v. Adeia Inc.*
No. 3:23-cv-06151 (N.D. Cal. Nov. 28, 2023)...................................................... 10

**Statutes**

35 U.S.C. § 101...................................................................................................... 21

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

35 U.S.C. § 287 ................................................................................................................ 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 3, 4

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court gave DIRECTV a chance to take its "best shot" to cure its jurisdictional defects.  DIRECTV's First Amended Complaint ("FAC") fails to do so.  The FAC instead merely adds window-dressing, along with additional conclusory assertions, but still fails to provide the critical jurisdictional facts the Court found lacking in its prior complaint.

The FAC now references confidential licensing discussions and a purported infringement analysis.  It also now discusses prior litigation and the parties' broader licensing dispute in considerable detail.  But none of those additions supplies the facts Article III requires.  DIRECTV still identifies no communication in which Adeia accused a specific DIRECTV product of infringing a specific Patent-in-Suit.[1]  It still identifies no claim chart, patent-specific infringement position, or other affirmative act directed to any Patent-in-Suit.

Nor does the FAC close the gap any other way.  Instead, it repeatedly asks the Court to infer the missing facts.  It asks the Court to infer a patent-specific controversy by vaguely gesturing at confidential communications whose details neither DIRECTV nor this Court may use to establish jurisdiction.  It asks the Court to infer representativeness without plausibly explaining how ten patents stand in for thousands.  And it asks the Court to infer redressability from allegations that success here may affect portfolio valuation, proposed royalties, and future negotiations.

The problem is not that the FAC says too little.  It is that it never addresses the jurisdictionally relevant points.  The FAC does not cure the jurisdictional gaps the Court previously identified.  It builds around them.  The complaint should be

---

[1] The patents at issue are U.S. Patent Nos. 10,506,010 (the "'010 Patent"), 8,805,418 (the "'418 Patent"), 11,778,245 (the "'245 Patent"), 10,110,961 (the "'961 Patent"), 9,715,334 (the "'334 Patent"), 8,156,528 (the "'528 Patent"), 8,601,526 (the "'526 Patent"), 8,640,165 (the "'165 Patent"), 8,234,668 (the "'668 Patent"), and 12,301,922 (the "'922 Patent") (collectively, the "Patents-in-Suit").

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

dismissed with prejudice.

## II.    BACKGROUND

DIRECTV and Adeia have participated in licensing relationships for decades, most recently under a portfolio-wide license that remained in effect through December 31, 2025.  FAC ¶¶ 19–22, Dkt. No. 64.  On December 29, 2025, two days before that license expired, DIRECTV filed this declaratory-judgment action—while the portfolio-wide license was still in effect and DIRECTV was still a licensee.  Original Compl. ("Compl."), Dkt. No. 1.

The original complaint sought declarations of non-infringement and invalidity as to the same ten patents at issue in the FAC.  Adeia moved to dismiss for lack of subject-matter jurisdiction.  Dkt. No. 38.  After full briefing and argument, the Court granted the motion with leave to amend.  Dkt. No. 61.

The Court concluded that DIRECTV had failed to establish redressability.  It agreed with Adeia that the alleged injury was portfolio-wide, while the requested relief concerned only ten patents selected by DIRECTV.  Hr'g Tr. 11:18–12:12.  The Court granted leave to amend for DIRECTV to make its "best shot."  *Id.* at 18:1–4.

DIRECTV filed its First Amended Complaint on July 21, 2026.  Dkt. No. 64.  The FAC asserts the same ten patents and seeks the same relief as before.  What changed is not the patents or claims, but a few of the surrounding allegations.  The FAC adds allegations concerning the parties' licensing discussions beginning in 2024, including references to "multiple communications and meetings" and a confidential analysis that DIRECTV alleges Adeia provided during those discussions.  FAC ¶¶ 25–39.  It quotes statements from Adeia's later-filed Southern District of New York complaint and preliminary-injunction briefing concerning that analysis and DIRECTV's alleged breach of contract and use of NDA-protected information in bringing this action.  *Id.* ¶¶ 30–39.  The FAC also adds descriptions of the Patents-in-Suit, allegations regarding purported patent-specific and portfolio-wide injuries, and several paragraphs explaining why adjudication of the ten Patents-in-Suit would

2

allegedly affect the parties' broader licensing dispute. *Id.* ¶¶ 41, 43, 50–57.  Finally, it adds allegations regarding various disputes involving Adeia and third parties, along with later-filed litigation between Adeia and DIRECTV. *Id.* ¶¶ 58–65.

The FAC still does not allege that Adeia ever accused DIRECTV of infringing any Patent-in-Suit based on any specific product.  It does not allege that Adeia provided a claim chart, a notice letter, or any other communication identifying a Patent-in-Suit and an accused DIRECTV product.  Indeed, as to the contents of the parties' communications, DIRECTV pleads that the "[s]pecific details" are "subject to a non-disclosure agreement." *Id.* ¶ 27.  And the FAC's allegations regarding what "Adeia will contend" remain predictions offered "[o]n information and belief," not allegations of what Adeia actually communicated. *Compare* FAC ¶¶ 42, 44 *with* Compl. ¶¶ 23–24.

## III.    LEGAL STANDARD

Rule 12(b)(1) permits dismissal where a court "lack[s] subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  "Lack of Article III standing requires dismissal for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Once jurisdiction is challenged, the plaintiff bears the burden to establish it. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  A 12(b)(1) challenge "may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).  The "irreducible constitutional minimum" of standing requires a plaintiff to demonstrate (1) "injury in fact," (2) "fairly traceable" to the defendant, and (3) "likely" to be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
CASE NO. 3:25-CV-11048-JSC**

Although Rule 12(b)(1) is governed by regional-circuit law as "a procedural question not unique to patent law," the existence of an Article III controversy in a patent declaratory judgment action is governed by Federal Circuit law. *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

A district court has jurisdiction only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The Declaratory Judgment Act "provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so." *Id.* at 136 (citation modified with emphasis in original).

Following *MedImmune*, the Federal Circuit requires "an injury in fact traceable to the patentee," which demands "an affirmative act by the patentee related to the enforcement of his patent rights." *3M*, 673 F.3d at 1377. To show this affirmative act, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other party's product line.'" *Id.* at 1378–79 (quotation omitted). "How much more" is a "case-by-case analysis." *Id.*

In applying these principles, courts in this District routinely consider factors "that the Federal Circuit and Supreme Court have generally considered in determining whether the patentee has taken an affirmative act: (1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a holding company with no income other than enforcing patent rights; (9) whether the patent holder refused to give assurance it will not enforce the patent; (10)

4

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as an attempt to create a controversy." *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 967–68 (N.D. Cal. 2020) (citing *Cepheid v. Roche Molecular Sys., Inc.*, No. 3:12-cv-04411-EMC, 2013 WL 184125, at *6 (N.D. Cal. Jan. 17, 2013)).

## IV.    ARGUMENT

The FAC's amendments do not cure the core problem.  DIRECTV still seeks to litigate ten selected patents as a proxy for a broader portfolio dispute.  But it still identifies no patent-specific conduct sufficient to create an Article III controversy, no basis to conclude that adjudicating those patents would redress the alleged injury, and no reason for the Court to exercise discretionary jurisdiction over a suit filed in the midst of ongoing licensing negotiations.  The labels have changed.  The jurisdictional defects have not.  The Court should dismiss with prejudice.

### A.    The FAC Does Not Establish an Injury-in-Fact

The FAC's injury-in-fact theory begins with conclusions and never arrives at the facts necessary to support them.  DIRECTV declares that it has suffered patent-specific injuries as to each Patent-in-Suit, as well as a portfolio-wide injury.  FAC ¶ 50.  But conclusions of injury-in-fact do not make them so.  *See Warren*, 328 F.3d at 1139 (courts need not accept as true "conclusory allegations" or "legal conclusions merely because they are cast in the form of factual allegations").  In the patent context, injury-in-fact requires "an affirmative act by the patentee relat[ed] to the enforcement of [its] patent rights."  *3M*, 673 F.3d at 1377.  And "more is required than a communication from a patent owner to another party, merely identifying its patent and the other party's product line."  *Id.* at 1378–79.  Article III requires allegations of specific conduct, not merely inferences around it.  The FAC offers the latter, but conspicuously still lacks the former.

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

### 1.    NDA communications cannot support an injury-in-fact.

As an initial matter, DIRECTV's amended theory rests on communications that cannot supply declaratory-judgment jurisdiction in the first place.  The FAC expressly alleges that the communications on which DIRECTV now relies were exchanged pursuant to an NDA during confidential licensing discussions.  FAC ¶ 27.  The FAC's principal amendment is its reliance on allegations concerning a confidential analysis that Adeia allegedly provided during those discussions and later referenced in its Southern District of New York filings.  *Id.* ¶¶ 27–39.  DIRECTV thus seeks to establish the missing affirmative act through communications that it admits were exchanged pursuant to an NDA.

Federal Circuit precedent forecloses that approach.  In *SanDisk Corp. v. STMicroelectronics, Inc.*, the court explained that a patentee could avoid declaratory-judgment jurisdiction during licensing discussions with "a suitable confidentiality agreement."  480 F.3d 1372, 1375 n.1 (Fed. Cir. 2007).  The parties here did exactly that.  FAC ¶ 27.  In *3M*, the Federal Circuit treated the "content of and confidentiality of the discussions" as "central to the jurisdictional analysis" and noted that discussions covered by a confidentiality agreement could not be used as the basis for jurisdiction.  673 F.3d at 1375 n.2, 1378.  Courts in this District have followed suit.  In *Intel Corp. v. Tela Innovations, Inc.*, the declaratory plaintiff itself acknowledged that it "cannot use post-NDA discussions to establish subject matter jurisdiction," even though those discussions allegedly included relevant claim charts.  No. 3:18-cv-02848, 2018 WL 4859314, at *3 n.1 (N.D. Cal. Oct. 5, 2018); *see also Dolby Labs., Inc. v. Intertrust Techs. Corp.*, No. 3:19-cv-03371, 2019 WL 5788574, at *6 (N.D. Cal. Nov. 6, 2019) (evaluating jurisdiction after excluding NDA-protected information).  The principle is straightforward: communications exchanged under an NDA during confidential licensing discussions cannot serve as the jurisdictional predicate for a later declaratory-judgment action.

### 2. The FAC fails to allege any specific actions or threats regarding the Patents-in-Suit or any DIRECTV product or service. (Factors 1, 2, and 10).

The FAC's defects run deeper than its improper reliance on NDA-protected communications. It never identifies the patent-specific affirmative act that those communications are supposedly being used to prove. The FAC does not allege that Adeia identified a particular Patent-in-Suit and a particular accused DIRECTV product (factor 10). It does not allege that Adeia provided claim charts or communicated an infringement analysis as to any Patent-in-Suit (factor 2). And it does not allege threatening language tied to any Patent-in-Suit, claim, or product (factor 1). That omission is especially significant because DIRECTV's amended theory depends on communications it cannot use and whose contents it does not disclose. Having failed to identify a patent-specific affirmative act in those communications, the FAC never identifies one anywhere else.[2] Instead, it pleads purported predicates for an affirmative act and asks the Court to assume the act itself.

Both *Cepheid* and *In re Qualcomm Litig.*, No. 3:17-cv-00108-GPC-MDD, 2017 WL 5985598, at *15 (S.D. Cal. Nov. 8, 2017) are instructive. In *Cepheid*, the patentee specifically identified the patent, informed the plaintiff that it had assessed the plaintiff's products, stated that a license was "necessary" for certain products, and imposed a response deadline. 2013 WL 184125, at *10–11. Even so, the court found no jurisdiction because, among other things, the patentee never specifically identified which products infringed, provided claim charts, indicated that it had performed a detailed infringement analysis, explicitly alleged infringement, or threatened suit. *Id.* at *11–13. Here, DIRECTV does not even describe the communications on which its

---

[2] Notably, when the FAC attempts to plead patent-specific injury, it repeatedly alleges only that Adeia demanded that DIRECTV license Adeia's *entire portfolio* "including" the relevant patent. FAC ¶¶ 102, 110, 118, 126, 134, 142, 150, 158, 166, 174.

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

theory depends.

*In re Qualcomm* underscores the point.  There, Apple relied on patents identified during licensing negotiations, extensive claim-charting efforts, and prior litigation activity involving Qualcomm.  The court nonetheless rejected jurisdiction as to the additional patents because Qualcomm never specifically communicated an infringement position regarding those patents, emphasizing that a "lack of specificity in identifying precise infringing patents weighs severely against finding declaratory judgment jurisdiction . . . ." *Id.* at *18.  Inclusion of patents on a lengthy list exchanged during negotiations was insufficient because declaratory-judgment jurisdiction requires "more specificity and more detailed infringement analysis . . . ." *Id.* at *19.

If the allegations in *Cepheid* and *Qualcomm* were insufficient, the FAC cannot possibly measure up.  Those cases involved a patentee identifying specific patents, detailed licensing discussions, and substantially greater infringement-related information than DIRECTV alleges here.  Yet the courts still found no controversy because the patentee never communicated a sufficiently specific infringement position for the patents at issue.  The FAC alleges even less.

Nor can DIRECTV invoke NDA-protected communications to bridge the gap.  The burden to establish jurisdiction is its own.  DIRECTV cannot withhold the alleged communications and then ask the Court to assume they contained everything necessary to establish injury-in-fact.

### 3. Adeia's litigation history does not supply the missing affirmative act.  (Factors 4 and 5).

Having failed to identify an affirmative act directed toward DIRECTV concerning the Patents-in-Suit, the FAC turns to litigation involving other parties, other patents, or both.  FAC ¶¶ 58–65.  Factors 4 and 5 concern prior litigation between the parties and the patentee's history of enforcing the patent at issue.  Neither helps DIRECTV here.

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

Factor 4 favors Adeia.  DIRECTV identifies no pre-suit litigation between the parties involving the Patents-in-Suit.  The litigation between Adeia and DIRECTV cited in the FAC is Adeia's later-filed Central District action, which postdates this case and therefore cannot create jurisdiction retroactively.  *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1383–84 (Fed. Cir. 2010).  Nor does that suit help on its own terms.  Adeia asserted four patents.  None is a Patent-in-Suit here.  FAC ¶ 63.

Factor 5 likewise favors Adeia.  The FAC identifies no examples of Adeia enforcing nine of the ten Patents-in-Suit.  It provides a single example of Adeia enforcing the '528 Patent against Comcast along with several other patents not at issue here more than six years ago.  On balance, it shows that the Patents-in-Suit have rarely, if ever, been litigated or asserted in litigation.

More fundamentally, the Federal Circuit has also repeatedly rejected the proposition that litigation directed at others can substitute for conduct directed at the declaratory plaintiff.  In *Innovative Therapies*, the court held that a patentee's "history of litigation against others, and general propensity to enforce its legal rights," did not establish jurisdiction absent conduct directed toward the plaintiff itself.  599 F.3d at 1382.  More recently, courts in this District have applied the same rule.  In *Red Hat*, the patentee had sued IBM, HPE, Google, Amazon, Microsoft, and Oracle on the very patents Red Hat sought to challenge, yet the court found no Article III controversy because the patentee had taken "no affirmative act whatsoever" toward Red Hat or its products.  *Red Hat, Inc. v. VirtaMove, Corp.*, 785 F. Supp. 3d 603, 609 (N.D. Cal. 2025).  And in *Samsung Elecs. Corp., Ltd. v. Oura Health Oy*, the court likewise held that lawsuits against others "do not suffice" absent an act directed at the declaratory plaintiff.  No. 3:24-cv-03245-AMO, 2025 WL 929410, at *4 (N.D. Cal. Mar. 27, 2025).

Those decisions dispose of the FAC's litigation-history allegations.  The Disney and AMD disputes involved different patents, different products, and different

9

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

disputes altogether.  FAC ¶¶ 64–65.  They therefore shed no light on whether Adeia created a controversy concerning the Patents-in-Suit.  Nor do the Altice, DISH, and X actions help DIRECTV.  *Id.* ¶¶ 60–62.  Those were declaratory-judgment actions filed by third parties.  They reflect the patent selections and litigation strategies of Altice, DISH, and X, not enforcement by Adeia.[3]

The flaw is pervasive throughout; DIRECTV asks the Court to infer an affirmative act directed toward DIRECTV from disputes involving different parties, different patents, or both.  *Innovative Therapies*, *Samsung*, and *Red Hat* squarely foreclose that approach.  Article III requires an affirmative act directed toward DIRECTV.  Litigation involving everyone else is not a substitute.

### 4.    The remaining *Cepheid* factors reinforce the existence of a portfolio dispute, not ten patent-specific controversies. (Factors 3, 6, 7, 8, 9, 11, 12, and 13).

The remaining factors do not alter the analysis.  Several find no support in the FAC at all.  The FAC does not allege that Adeia imposed a patent-specific deadline or response date tied to any Patent-in-Suit (factor 3) or that DIRECTV sought a covenant not to sue or other assurance of non-enforcement and that Adeia refused (factor 9).  Nor does DIRECTV allege that Adeia's conduct caused DIRECTV to redesign products, discontinue services, modify features, or otherwise alter its business conduct in response to a patent-specific assertion (factor 6).  To the contrary, DIRECTV alleges that it continues to offer the same products and services.  *Id.* ¶¶ 4, 47.  The FAC also does not identify when or if Adeia supposedly asserted infringement of any Patent-in-Suit, making it impossible to assess the immediacy of any patent-specific

---

[3] For instance, the X action arose from materially different circumstances.  Adeia had sued X more than three months earlier for breach of an existing patent-license agreement, and X itself alleged that Adeia filed that action because X had "stopped making payments under that agreement."  *X Corp. v. Adeia Inc.*, No. 3:23-cv-06151 (N.D. Cal. Nov. 28, 2023), Dkt. No. 1 ("Complaint") ¶¶ 27, 31.  X's later-filed declaratory-judgment action thus arose against the backdrop of a distinct contractual dispute and does not evidence affirmative enforcement by Adeia of the four patents X selected.

controversy (factor 12).  Finally, there are no allegations regarding whether DIRECTV initiated communications with Adeia to assert the Patents-in-Suit (factor 13).

The FAC's allegations regarding the frequency of communications and Adeia's familiarity with DIRECTV's business fare no better (factors 7 and 11).  The FAC alleges that the parties engaged in "multiple communications and meetings" beginning in 2024 and a long-standing licensing relationship between the parties.  *Id.* ¶ 25.  But frequency cannot substitute for specificity.  The FAC never alleges whether or how many (if any) of those communications addressed any Patent-in-Suit, who discussed those patents, what patent-specific positions were conveyed, or what products were identified.  A decades-long licensing relationship may show that Adeia knew DIRECTV's business.  It does not show that Adeia had analyzed any DIRECTV product or service against any Patent-in-Suit before DIRECTV sued (factor 11).  The FAC still does not identify any communication in which Adeia tied a Patent-in-Suit to a specific accused DIRECTV product.

The only factor that even arguably favors DIRECTV is factor 8.  The FAC alleges that Adeia derives substantial revenue from patent licensing and has pursued patent litigation against third parties.  *Id.* ¶¶ 12, 64–65.  So while factor 8 slightly favors DIRECTV, it is only one consideration in the broader *Cepheid* analysis, and it cannot substitute for an affirmative act directed toward the declaratory plaintiff.  Adeia is aware of no authority suggesting that this factor alone could support jurisdiction where other factors weigh against it.  In any event, the FAC does not allege that Adeia is merely a patent-holding company with no activities apart from enforcement.  To the contrary, it acknowledges Adeia's roots in operating companies such as TiVo and Rovi, and the source document on which the FAC relies discusses Adeia's continued investment in research and development.  FAC ¶¶ 11–17.  At most, factor 8 provides background context.  It does not establish a patent-specific controversy concerning any Patent-in-Suit.

11

### 5. Generalized portfolio licensing pressure cannot establish injury-in-fact.

Injury-in-fact in a patent declaratory action requires "an affirmative act by the patentee relating to the enforcement of his patent rights." *3M*, 673 F.3d at 1377. That act must amount to a "concrete claim of a specific right"—an assertion of rights "under a patent" based on certain identified ongoing or planned activity of the plaintiff. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008); *SanDisk*, 480 F.3d at 1381. A generalized statement that a company requires a license to a portfolio containing more than four thousand patents, and practices technology covered by patents somewhere within that portfolio, is neither. As *Prasco* explained, "[i]mportant to the totality of the circumstances analysis . . . is that which has *not* occurred." 537 F.3d at 1339. Here, DIRECTV does not allege that Adeia asserted rights under any specific patent about any specific activity.

The cases applying those principles have rejected jurisdiction despite allegations of far more specific conduct. *Cepheid* found no controversy even though the patentee identified the patent-in-suit in a draft license agreement alongside more than one hundred other patents, later identified it again in a follow-up letter, stated that a license was necessary, and imposed a response deadline. 2013 WL 184125, at *10–11. Even then, the court found no controversy because the patentee never identified which products allegedly infringed the patent. *Id.* at *11. Likewise, *In re Qualcomm* found no controversy as to additional patents-in-suit despite extensive licensing negotiations, a 1,975-page patent list, more than one hundred claim charts (on other patents), and industry litigation. 2017 WL 5985598, at *15–19. In both cases, the missing ingredient was specificity. The patentee had not communicated a concrete assertion of patent rights sufficient to create a justiciable controversy. *In re Qualcomm*, 2017 WL 5985598, at *18–19; *Cepheid*, 2013 WL 184125, at *11.

Patent law routinely distinguishes between generalized portfolio discussions and patent-specific assertions. Section 287 provides a useful analogy. A patentee

12

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

cannot recover pre-suit damages merely by conveying its belief that an accused infringer's products implicate its patent portfolio; actual notice requires a communication directed to specific patent rights and alleged infringement. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (drawing a connection between whether an informational letter is sufficiently threatening to justify a declaratory-judgment action and whether it constitutes a charge of infringement for purposes of § 287 notice). The same principle should inform the Article III inquiry. A statement that a party requires a license under an unidentified subset of a large portfolio does not crystallize a dispute over any particular patent. If such communications are too indefinite to provide notice of infringement for damages purposes, they are likewise too indefinite to create the injury-in-fact required for declaratory judgment jurisdiction.

DIRECTV's alternative injury theory is a "portfolio-wide injury." FAC ¶ 50. DIRECTV alleges that Adeia sought a new license agreement, maintained that DIRECTV requires a license to its media portfolio, and asserted that a license would be necessary because DIRECTV infringes patents somewhere within that portfolio. *Id.* ¶¶ 25–27. Those allegations may explain DIRECTV's desire to resolve its dispute with Adeia. But they do not amount to a "concrete claim of a specific right," *Prasco*, 537 F.3d at 1340, or an assertion of rights "under a patent," *SanDisk*, 480 F.3d at 1381. The FAC thus relabels a licensing disagreement as an injury-in-fact without ever alleging the threshold conduct Federal Circuit precedent requires.

### B.    DIRECTV's Complaint Lacks Redressability

The First Amended Complaint fails to establish injury-in-fact for the reasons discussed above. But even if the Court concludes otherwise, DIRECTV still must allege that the relief it seeks would redress that injury. It does not. The FAC alleges, at most, portfolio-wide licensing pressures arising from Adeia's demand that DIRECTV license a portfolio containing thousands of patents. FAC ¶¶ 25, 27, 50. Yet DIRECTV seeks relief concerning only ten patents. *Id.* at Prayer for Relief. The

13

FAC does not allege that victory on those ten patents would end, or even materially reduce, the portfolio-wide pressure it identifies as its injury. Indeed, the FAC itself alleges that Adeia is currently asserting four different patents against DIRECTV in the Central District of California, none of which is a Patent-in-Suit here. *Id.* ¶ 63. Thus, even a complete victory for DIRECTV in this action would not resolve a single claim in the Central District of California action and, as such, the broader licensing pressure DIRECTV identifies as its injury would remain.

### 1. The amended allegations taken as true do not relieve the alleged harm.

The FAC now alleges that the Patents-in-Suit are directed to "key technologies," are "amongst the most relevant" patents to DIRECTV's business, and are believed to be "representative" of broader issues within Adeia's portfolio. *Id.* ¶¶ 54–55. But those allegations do not establish redressability. Even accepted as true, they go only to why DIRECTV selected these patents, not to whether a judgment concerning them would redress the injury DIRECTV actually alleges.

Critically, the FAC nowhere alleges that adjudication of these ten patents would eliminate, reduce, or otherwise relieve the portfolio-wide licensing pressure that DIRECTV identifies as its injury. It does not allege that Adeia's purported licensing demand turns on these patents. It does not allege that a judgment on these patents would prevent Adeia from relying on the thousands of patents that remain outside this case. And it does not allege that success on any or all of the Patents-in-Suit would extinguish DIRECTV's need, in Adeia's alleged view, for a portfolio license. The pending Central District of California action confirms the mismatch. Because none of the four patents Adeia is asserting there is before this Court, adjudication of the Patents-in-Suit would leave that live infringement dispute intact. *Id.* ¶ 63. The FAC instead alleges only that adjudication of these patents would affect the parties' "positions" in future negotiations, alter the perceived value of a license, and bear on whether DIRECTV ultimately agrees to one. *Id.* ¶¶ 53–55.

14

Those allegations underscore the defect; they do not cure it. Article III requires allegations that the requested relief is likely to redress the plaintiff's injury. It is not enough to allege that a favorable judgment might improve a party's bargaining position. A ruling that affects negotiations is not the same thing as a ruling that redresses the alleged injury. Even after prevailing on all ten patents, nothing in the pleadings suggests that DIRECTV would not face precisely the same alleged harm identified in the FAC: Adeia could continue to maintain that DIRECTV requires a license to the remainder of its portfolio. The parties' negotiating leverage might change, but the injury DIRECTV identifies would remain.

### 2.    The allegations do not plausibly plead representativeness.

DIRECTV's representativeness theory suffers from a threshold defect: it is asserted but never supported. The FAC repeatedly labels the Patents-in-Suit as "representative," but nowhere alleges facts showing that they are representative of the thousands of patents outside this case.

The central allegation is that DIRECTV "selected the Patents-in-Suit because they are directed to key technologies believed to be representative of Adeia's patents covering said key technologies." FAC ¶ 54. But that is the conclusion masquerading as the premise. DIRECTV identifies no represented patent or claim, no overlapping claim language, and no comparison suggesting that adjudicating these ten patents would say anything about the thousands DIRECTV left untouched. Merely labeling them "representative" does not plausibly suggest that they actually represent the rest of the portfolio.

The surrounding allegations do not fill the gap. DIRECTV alleges that the Patents-in-Suit have "significant patent life remaining" and are "amongst the most relevant to DIRECTV's streaming and cable enterprise." *Id.* Those allegations concern the ten patents DIRECTV selected. They say nothing about the thousands it did not. Patent life is not representativeness. Relevance to DIRECTV's business is not representativeness. Neither allegation provides a basis to infer that a ruling on

15

these patents would speak to any others.

The same flaw pervades DIRECTV's remaining theories. Its MVPD allegation assumes that the selected MVPD-related patents materially affect the value of a portfolio license, but DIRECTV pleads no facts plausibly suggesting that those patents drive, reflect, or stand in for the remainder of the portfolio. *Id.* ¶ 53. Its eligibility allegation asserts that three patents are "representative of a portfolio-wide validity concern," but identifies no other patent supposedly represented by those claims. *Id.* ¶¶ 55–56. A "concern" is not a patent, and calling three patents representative does not make them so. Moreover, this assertion flies in the face of common sense. A finding of patent invalidity requires clear and convincing evidence directed to a particular claim of a particular patent. It is simply implausible to suggest that a showing of invalidity as to three patents would have any impact on the validity of the thousands of other patents in the portfolio.

DIRECTV's fullest effort comes in its discussion of litigation history. There it asserts that prior litigation "confirms the significance and representativeness of the Patents-in-Suit to Adeia's portfolio." *Id.* ¶ 58. But the allegations that follow establish only that various parties selected patents they considered important to their own disputes, and that Adeia's predecessor asserted one of the Patents-in-Suit against Comcast, a third party, along with several other patents more than six years ago. Altice challenged the '010 and '526 Patents. X Corp. challenged four patents relating to video streaming.[4] *Id.* ¶¶ 59–62. DISH later filed a declaratory-judgment action on the same ten Patents-in-Suit. FAC ¶ 61. Even taking those allegations as true, they establish only that particular patents were important in particular disputes to third parties. They say nothing about whether one Adeia patent stands in for another, particularly with regard to Adeia's purported licensing pressure.

Indeed, DIRECTV's own pleading undermines its representativeness theory.

---

[4] *See* supra n.3.

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

DIRECTV alleges that six of the ten Patents-in-Suit overlap with "previous actions." *Id.* ¶¶ 58–60. However, the FAC describes at least twenty other patents litigated, challenged, or asserted in the actions it discusses: the '363 continuation patent, four patents challenged in the Altice action, four patents challenged in the X Corp. action, five patents asserted against DISH, and six patents asserted against Disney. *Id.* ¶¶ 59–64. DIRECTV never explains how adjudicating the ten patents selected for this suit would establish anything about those twenty other patents, much less the thousands of patents in Adeia's portfolio. Those twenty other patents were litigated in disputes involving other parties, none of which included DIRECTV. The litigation history fails to show that adjudicating DIRECTV's chosen ten patents would meaningfully address the rest of Adeia's portfolio.

Most telling is the Central District action. DIRECTV alleges that Adeia is presently asserting four patents against DIRECTV itself: the '013, '927, '884, and '081 Patents. *Id.* ¶ 63. None is a Patent-in-Suit here. DIRECTV instead alleges only that those patents are "similar to" patents selected for this case. *Id.* But "similar" is precisely the sort of conclusory label that cannot carry DIRECTV's burden. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The FAC pleads no facts explaining the similarity, no overlapping claim limitations, and no basis to conclude that a judgment here would resolve, narrow, or otherwise affect the patents Adeia is actually asserting against DIRECTV today in that case. Instead, the FAC treats the Central District patents as separate patents giving rise to a separate lawsuit. That treatment is impossible to reconcile with DIRECTV's theory that ten selected patents somehow stand in for thousands of others.

The continuation patent makes the point still more starkly. DIRECTV alleges that U.S. Patent No. 9,578,363 is a continuation of the '668 Patent and that the Board found the '363 Patent claims unpatentable in 2019—meaning that the '363 Patent has different claims but shares the same specification and priority chain. FAC ¶ 59. Yet

17

the '668 Patent remains in Adeia's portfolio, remains within the scope of the purported licensing pressure DIRECTV alleges, and remains the subject of this action. If the prior adjudication of a patent sharing the same specification and priority chain did not resolve the status of the '668 Patent, DIRECTV here offers no plausible basis to conclude that adjudicating ten unrelated patents based on conclusory assertions of representativeness will resolve thousands of others.

The Court previously questioned DIRECTV's representativeness allegations: "That also sounds like a conclusion. The representatives -- how?" Hr'g Tr. 8:14–16. The FAC does not answer with facts and fails in the same way as before. It substitutes labels for facts: "Representative," "Key," "Relevant," "Similar." Those words do not establish representativeness or jurisdiction.

### 3. The case law confirms that DIRECTV has not alleged redressability.

*In re Qualcomm* confirms that DIRECTV cannot show redressability. There, the court confronted a challenge to nine patents drawn from a portfolio of thousands and rejected declaratory-judgment jurisdiction because the plaintiffs failed to show how adjudication of those patents would redress the broader dispute between the parties centered on royalties. 2017 WL 5985598, at *22. The court was "not persuaded that a declaratory judgment as to only nine patents in a portfolio of thousands would affect this legal relationship" and found that proposition "particularly questionable given the limited number of patents at issue in comparison with the larger portfolio of thousands of patents . . . ." *Id.* The court therefore dismissed the claims and granted leave to amend, directing the plaintiffs to identify how a favorable judgment would "actually affect the legal relationship" between the parties. *Id.*

A similar problem exists here. As discussed above, DIRECTV identifies portfolio-wide licensing pressure as its injury. Yet it seeks declarations concerning only ten patents selected from a portfolio that it alleges contains more than 4,000 issued U.S. patents. FAC ¶ 37. And after amendment, DIRECTV's answer remains

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

essentially the same one rejected in *Qualcomm*: success on the selected patents may affect negotiation positions, portfolio valuation, or the perceived value of a future license. *Id.* ¶¶ 53–55. But the question is not whether adjudication of ten patents might influence future negotiations. It is whether adjudication of ten patents plausibly redresses the portfolio-wide licensing pressure that DIRECTV identifies as its injury. Like the plaintiffs in *Qualcomm*, DIRECTV never bridges that gap.

To be sure, part of the court's analysis in *Qualcomm* turned on the fact that the royalty obligations before it were not contingent on the validity or infringement of the nine patents at issue. 2017 WL 5985598, at *21–22. But the court did not stop there. It separately expressed skepticism that adjudication of nine patents could affect a dispute centered on a portfolio of thousands, emphasizing the striking mismatch between the scope of the alleged controversy and the scope of the requested relief. *Id.* That reasoning applies with even greater force here. DIRECTV seeks declarations concerning ten patents from a portfolio it alleges contains more than 4,000 patents.

The Federal Circuit's decision in *Apple Inc. v. Qualcomm Inc.* reinforces the same point. The court rejected an attempt to establish standing based on patents' inclusion within a much larger portfolio, emphasizing that Apple had failed to allege that adjudication of the challenged patents would affect the obligation it sought to escape. 992 F.3d 1378, 1383 (Fed. Cir. 2021). The same defect exists here. DIRECTV never plausibly alleges that adjudication of the ten Patents-in-Suit would eliminate, materially reduce, or otherwise alleviate the portfolio-wide licensing pressure that it identifies as its injury. *AbbVie Inc. v. MedImmune Ltd.* confirms why that matters. There, the Federal Circuit held that a licensee could not pursue a freestanding patent challenge where the requested patent ruling would not resolve the parties' underlying licensing dispute. 881 F.3d 1334, 1338–40 (Fed. Cir. 2018). As the court explained, Article III does not permit "piecemeal adjudication of defenses that *would not finally and conclusively resolve* the underlying controversy." *Id.* at 1337. Here too, DIRECTV seeks adjudication of a handful of patents, but never

plausibly alleges that success on those patents would resolve the portfolio-wide dispute that allegedly gives rise to its injury.

### C.   The Court Should Decline to Exercise Declaratory Judgment Jurisdiction

Even if the FAC establishes an Article III controversy, the Court should nevertheless decline to exercise declaratory-judgment jurisdiction.  DIRECTV's allegations make clear that it seeks to use this case to affect portfolio valuation, proposed royalties, and the parties' negotiating positions in a broader licensing dispute.  The Declaratory Judgment Act does not require courts to facilitate that result.

### 1.   DIRECTV filed this action to obtain leverage in the parties' broader portfolio negotiations.

DIRECTV's own allegations reveal the purpose of this lawsuit.  It was not filed to resolve a discrete controversy concerning ten patents.  It was filed to improve DIRECTV's position in an ongoing portfolio-wide licensing dispute.

The timing is telling.  DIRECTV filed this action on December 29, 2025, while its portfolio license remained in effect through December 31, 2025, and while the parties were engaged in discussions concerning a successor license.  FAC ¶¶ 22, 25, 29–30.  The Declaratory Judgment Act does not reward that kind of anticipatory forum shopping.  The Federal Circuit has cautioned against a holding that "would invite a declaratory judgment plaintiff in a patent case to file suit at the earliest moment it conceives of any potential benefit," confident that it might provoke a responsive suit or, at worst, face dismissal without consequence.  *Innovative Therapies*, 599 F.3d at 1384.  DIRECTV's filing runs afoul of that very caution: it sued first, while still covered by its license and before the parties' commercial negotiations had run their course.

Indeed, the FAC now confirms that DIRECTV seeks to use this action to alter the parties' positions in their broader portfolio negotiations.  DIRECTV alleges that adjudicating these ten patents will "substantially change the total value" of a portfolio

20

license, "meaningfully impact the parties' positions moving forward," affect the "scope, royalty period, and value" of a possible license, and bear on "whether DIRECTV agrees to a license at all." FAC ¶¶ 53–54. It further alleges that adjudicating three selected patents under § 101 will "adjust proposed royalties[] and advance resolution of the broader licensing dispute." *Id.* ¶ 55. And it ultimately describes the Patents-in-Suit as the "best vehicles" to "advance resolution of the broader dispute." *Id.* ¶ 57. Thus, by DIRECTV's own account, this action is not an end in itself. It is a means of affecting portfolio valuation, proposed royalties, and the parties' negotiating positions in a broader licensing dispute.

This is the sort of case in which the Federal Circuit has approved declining to exercise jurisdiction where the declaratory-judgment procedure is deployed as a bargaining chip in a license negotiation. In *EMC Corp. v. Norand Corp.*, the Federal Circuit affirmed discretionary dismissal even though an actual controversy existed because EMC had filed suit "merely [as] a defensive step" to "improve [its] posture in the ongoing negotiations," conduct that the court held did not serve the purposes of the Declaratory Judgment Act. 89 F.3d 807, 815 (Fed. Cir. 1996), overruled in part on other grounds by *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

The parallels here are unmistakable. DIRECTV filed suit while still operating under its existing license and now alleges that the requested declarations will affect portfolio valuation, proposed royalties, and the parties' relative bargaining positions. FAC ¶¶ 22, 25, 29–30, 53–57. As in *EMC*, the asserted value of this action lies not in its ability to resolve the underlying dispute, but in its ability to influence the negotiations surrounding it. *See Current Lighting Sols., LLC v. Signify Holding B.V.*, No. 1:23-cv-11398-GAO, 2024 WL 456923, at *4 (D. Mass. Feb. 6, 2024) (ruling that "initiation of this action had a tactical motivation that does not serve the proper objectives of the Declaratory Judgment Act").

Endorsing DIRECTV's approach would invert the ordinary relationship between negotiation and litigation. A licensee approaching renewal could file suit

before its agreement expires, select a handful of patents from a much larger portfolio, and use the resulting litigation to influence the parties' ongoing negotiations. The Declaratory Judgment Act does not require courts to facilitate that strategy. The Court should decline to do so here.

## V.    CONCLUSION

For the foregoing reasons, Adeia's motion should be granted, and DIRECTV's declaratory judgment complaint should be dismissed with prejudice.

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**

Dated: August 4, 2026

Respectfully submitted,
*/s/ Brian D. Johnston*

Bradley W. Caldwell (appearance *pro hac vice*)
Texas State Bar No. 24040630
bcaldwell@caldwellcc.com
Jason D. Cassady (appearance *pro hac vice*)
Texas State Bar No. 24045625
jcassady@caldwellcc.com
John Austin Curry (appearance *pro hac vice*)
Texas State Bar No. 24059636
acurry@caldwellcc.com
Brian D. Johnston (appearance *pro hac vice*)
Texas State Bar No. 24080965
bjohnston@caldwellcc.com
R. Seth Reich Jr. (appearance *pro hac vice*)
Texas State Bar No. 24088283
sreich@caldwellcc.com
John F. Summers (appearance *pro hac vice*)
Texas State Bar No. 24079417
jsummers@caldwellcc.com
Vlada Wendel (appearance *pro hac vice*)
Texas State Bar No. 24131751
vwendel@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

M. Elizabeth Day (SBN 177125)
eday@bdiplaw.com
Marc Belloli (SBN 244290)
mbelloli@bdiplaw.com
Robin Curtis (SBN 271702)
rcurtis@bdiplaw.com
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 464-8501
Facsimile: (415) 426-4744

*Attorneys for Defendants*
*Adeia, Inc., Adeia Guides Inc., Adeia Media*
*Holdings LLC, Adeia Technologies Inc., and*
*Adeia Media Solutions Inc.*

23
**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
**CASE NO. 3:25-CV-11048-JSC**